WAGLER, P. J.
 

 The defendants were convicted of a violation of section 11721 of the Health and Safety Code of the State of California. Each has appealed from the judgment of conviction and the order denying him a new trial.
 

 Section 11721 makes it unlawful for anyone to use, be under the influence of, or to be addicted to the use of narcotics, except when administered by or under the direction of a licensed person.
 

 It is the contention of each defendant that the admission in evidence of the result of a Nalline test administered shortly following his arrest constituted prejudicial error. Each defendant also contends that proper venue was not shown and that the evidence was insufficient to sustain his conviction.
 

 Following their arrest defendants were taken to the Oakland City Prison. They were there interviewed by police officers attached to the Special Service Detail who testified that each defendant admitted the prior use of narcotics but denied any recent use, and that each had old as well as fresh needle marks on the inside of the left forearm. Each officer also testified without objection that in his opinion, based upon his experience and observations, each defendant was addicted to the use of narcotics and had recently used the same.
 

 A written release and authorization for the administration of a Nalline test signed by each defendant was received in
 
 *860
 
 evidence. It is conceded that this consent was freely and voluntarily given.
 

 The Nalline test was administered by Dr. James G. Terry, Medical Officer of Santa Rita Rehabilitation Center. The method used was summarized by him substantially as follows: After a cursory physical examination the suspect is seated in a specially designed barber type chair with a fixed lamp on one side and a steel hand rest on the other. By means of a card containing a series of dots known as a “pupillometer” the doctor then measures and records the size of the pupil. This is done by using the hand rest to steady the hand and by matching the pupil size with the size of one of the dots on the pupillometer. Thereafter three milligrams of Nalline (N-allylnormorphine, a synthetic opiate antinarcotie in action) is injected under the skin, and the suspect is placed in another room for a period of at least 30 minutes. After the lapse of 30 minutes or longer, the suspect is again placed in the chair and his pupils are again measured in the manner above described.
 

 ' When tested in the above manner, the pupils of each defendant dilated. This according to Dr. Terry indicated a positive reaction, i.e., the recent use of narcotics.
 

 Based upon defendants’ history of prior use, the needle marks which were observed and the results of his Nalline tests, Dr. Terry expressed the opinion that each defendant was at the time of his examination mildly under the influence of a narcotic. It is the admission of this testimony of which defendants complain.
 

 i If the above testimony was based upon adequate data it would, of course, fall within a well-recognized exception to the rule which excludes opinion evidence. Wigmore on Evidence, third edition, section 658. Code of Civil Procedure, section 1870, subdivision 9.
 

 However, the results of tests of the type here under attack, as well as opinions based thereon, are admissible only if the tests have gained acceptance in the field of learning in which they are in use.
 
 People
 
 v.
 
 Carter,
 
 48 Cal.2d 737 [312 P.2d 665];
 
 People
 
 v.
 
 Aragon,
 
 154 Cal.App.2d 646 [316 P.2d 370];
 
 People
 
 v.
 
 Porter,
 
 136 Cal.App.2d 461 [288 P.2d 561]
 
 ; People
 
 v.
 
 Wochnick, 98
 
 Cal.App.2d 124
 
 [219 P.2d 70]; People
 
 v.
 
 Morse,
 
 325 Mich. 270 [38 N.W.2d 322];
 
 Frye
 
 v.
 
 United States,
 
 293 F. 1013 [54 App.D.C. 46].
 

 Wigmore states the rule as follows: “When the testimony thus appearing to the ordinary layman to lack a rational
 
 *861
 
 basis is founded on observations made with esoteric methods or apparatus . . . the method should be explained by the witness, and if it be vouched for as accepted in his branch of learning, it suffices to admit his testimony.” Wigmore on Evidence, third edition, section 659.
 

 Dr. Terry testified that during the past three years he had carried on experimental work with Nalline at the Santa Rita Rehabilitation Center (Alameda County Jail), that his experimentation had been done by means of controlled tests with approximately 2300 persons, that some of said tests dealt with non-users, others with moderate users, and still others with addicts; that during this experimental work he had conferred personally with Dr. Victor Vogel, former head of the United States Public Health Hospital at Lexington, Kentucky, a pioneer in the use of the Nalline test, and that Dr. Vogel had participated in the tests with him at Oakland, California; that his experiments had resulted in findings that in small dosage Nalline produced a pupillary reaction; that under controlled conditions, after an injection of three milligrams of Nalline, a non-user’s pupils will contract, a mild or moderate user’s pupils will remain about the same size, and that the pupils of a person who is using a substantial amount of narcotics tending toward addiction will dilate.
 

 In addition to Dr. Terry, the People called as experts Dr. Joseph Lamberti, a specialist in psychiatry, and Dr. William D. Perry, a specialist in internal medicine.
 

 Each of the experts, including Dr. Terry, testified in substance that he had spent some time in making studies of and inquiries concerning the methods used for the detection of narcotic addition, and more particularly the use of the drug N-allylnormorphine (Nalline) in this connection. Each had read numerous articles on the subject in medical periodicals and had discussed the test with many other physicians. None had ever read or heard anything critical or derogatory concerning the Nalline test. Each was familiar with the writings of Doctors Harris Isbell, Victor Vogel, A. W. Wikler, and H. P. Frazer, and other recognized authorities in the field of narcotic addiction. Each testified that in his opinion the medical profession generally had accepted the use of Nalline as a reliable means of detecting the presence of an opiate in a person’s system and that he personally accepted it as such.
 

 No experts were called by the defendants and the expert testimony as above summarized stands uncontradicted in the record with this exception: Each of the People’s experts did
 
 *862
 
 admit on cross-examination that the medical profession generally is unfamiliar with the use of Nalline and therefore it cannot be truthfully said that the Nalline test has met with general acceptance by the medical profession as a whole, general acceptance being at present limited to those few in a specialized field who deal with the narcotic problem.
 

 Should this fact render the testimony inadmissible? We believe not. All of the medical testimony points to the reliability of the test. It has been generally accepted by those who would be expected to be familiar with its use. In this age of specialization more should not be required.
 

 The medical testimony, however, is not the only evidence in the record of reliability. In 1957 the Legislature of this State enacted section 11722 of the Health and Safety Code. This section reads in part as follows:
 

 “Whenever any court in this State grants probation td a person who the court has reason to believe is or has been a user of narcotics, the court may require as a condition to probation that the probationer submit to periodic tests by a city or county health officer, or by a physician and surgeon appointed by the city or county health officer with the approval of the State Division of Narcotic Enforcement, to determine, by means of the use of
 
 synthetic opiate antinarcotic in action
 
 whether the probationer is a narcotic addict. ’’ (Emphasis added.)
 

 There being uncontradicted evidence in the record before us that the Legislature had the Nalline test in mind when it enacted section 11722, this enactment must be accepted as a legislative mandate that the Nalline test has probative value.
 

 Our conclusion regarding the admissibility of Dr. Terry’s testimony necessarily disposes of defendents’ contention that the evidence was insufficient to sustain their conviction. Except for the fact that the complaint was in the conjunctive rather than in the disjunctive, the defendants were charged in the language of the statute. They could have been and were, however, convicted of only one offense. Under such circumstances if the evidence is sufficient to support a finding of guilt of any one of the acts denounced by the statute it is sufficient to sustain a conviction.
 
 People
 
 v.
 
 Kuder,
 
 90 Cal.App. 594 [266 P. 337];
 
 People
 
 v.
 
 Kinsley,
 
 118 Cal.App. 593 [5 P.2d 938];
 
 People
 
 v.
 
 Reid,
 
 106 Cal.App. 616 [289 P. 653];
 
 People
 
 v.
 
 Black,
 
 45 Cal.App.2d 87 [113 P.2d
 
 746]; People
 
 v.
 
 Ah Woo,
 
 28 Cal. 205;
 
 People
 
 v.
 
 Thompson,
 
 111 Cal. 242 [43 P. 748]. Suffice it to say that the evidence
 
 *863
 
 heretofore set forth would support a finding that each defendant was under the influence of and was addicted to a narcotic at the time of his arrest.
 
 People
 
 v.
 
 Culberson,
 
 140 Cal.App.2d Supp. 959 [295 P.2d 598];
 
 People
 
 v.
 
 Jaurequi,
 
 142 Cal.App.2d 555 [298 P.2d 896];
 
 People
 
 v.
 
 Thompson,
 
 144 Cal.App.2d Supp. 854 [301 P.2d 313].
 

 Appellant’s contention that proper venue was not shown is also without merit. When the charge is “addiction” or “being under the influence” the place where the narcotic is taken into the system is unimportant. See
 
 People
 
 v.
 
 Garcia,
 
 122 Cal.App.2d Supp. 962 [266 P.2d 233]. Both defendants were arrested in the city of Oakland. They were in the city of Oakland when interviewed and examined by the officers of the Special Service Detail and when the Nalline tests were made. It follows that the Municipal Court of the Oakland-Piedmont Judicial District was the proper forum for their trial.
 

 The order denying motion for a new trial is in each case affirmed. The judgment of conviction is in each ease affirmed.
 

 Ledwich, J., and Hoyt, J., concurred.