[Crim. No. 7208. In Bank. Feb. 14, 1963.]

In re DAVID DE LA O on Habeas Corpus.

Irmas & Rutter and S. M. Irmas, Jr., for Petitioner.

Stanley Mosk, Attorney General, and Gordon Ringer, Deputy Attorney General, for Respondent.

SCHAUER, J.—This matter is before us on an order to show cause issued upon an application for writ of habeas corpus filed in behalf of David De La O, who is confined in the California Rehabilitation Center under an order of commitment entered pursuant to Penal Code section 6450 (*post,* fn. 1). De La O, hereinafter called petitioner, attacks the constitutionality of the mentioned section and, generally, of chapters 11 and 12, title 7, of part III of the Penal Code. (§§ 6400-6555, added by Stats. 1961, ch. 850, pp. 2223 et seq.) After analysis of the subject statute we have concluded that petitioner's contentions in this respect are not well taken, that he has not established a right to be released from custody, and that the order to show cause should be discharged.

Incidentally, we resolve in favor of petitioner his secondary contention that he is entitled to appellate review of the order of the superior court committing him to the California Rehabilitation Center. This determination, however, does not require that the writ of habeas corpus issue.

Petitioner was charged by criminal complaint in the municipal court with a violation of Health and Safety Code section 11721 (*post,* fn. 3), a misdemeanor, in that on a particular date "in the City of Pasadena, County of Los Angeles, State of California" he "did wilfully and unlawfully use and be addicted to the unlawful use of narcotics. . . ." Petitioner waived jury trial; he was found guilty as charged, and a motion for new trial was denied. Thereafter that court on its own motion suspended proceedings in the criminal action over which it had jurisdiction, and certified petitioner to the superior court for proceedings therein pursuant to Penal Code section 6450.[1] No judg-

---

[1]Penal Code section 6450 provides in pertinent part: "Upon conviction of a defendant of any crime in a municipal or justice court, if it appears to the judge that the defendant may be addicted or by reason of repeated use of narcotics may be in imminent danger of becoming addicted to narcotics, such judge shall adjourn the proceedings or suspend the imposition of the sentence and certify the defendant to the superior court.

"The superior court shall direct the sheriff to file a petition to ascertain if such defendant is addicted to narcotics or is in imminent danger of becoming addicted thereto. Proceedings shall be conducted in substantial

ment imposing imprisonment, fine, or other penal sanction has been entered in the criminal case.

The superior court conducted a hearing and examination in accordance with the terms of Penal Code section 6450 (*ante,* fn. 1). Petitioner was represented by counsel and evidence was received. Two physicians who had examined petitioner gave as their opinion that he was a narcotic addict, and recommended that he be committed to the California Rehabilitation Center. Their recommendation was based (1) on physical examination of petitioner which indicated in their opinion that "he was using a drug of the opium series at the time of the examination or shortly used prior to that time" and (2) on the history petitioner gave them that "Heroin started 1943. His maximum use of Heroin has been one and a half grams [a day]. Average use is one gram. He has also used Cocaine and opium." At the conclusion of the hearing the superior court made appropriate findings and entered an order adjudging petitioner to be "a narcotic addict within the meaning of Section 6450 of the Penal Code" and committing him to the custody of the Director of Corrections "for placement as provided for by law, for a period of five years, except as earlier discharge is provided for by law." Petitioner's demand for a jury trial in the superior court on the issue of addiction was denied. [2]

*Constitutionality of chapters 11 and 12,*
*title 7, of part III of the Penal Code*

Petitioner contends that the subject statute (Pen. Code, § 6450, and related sections) is unconstitutional because (1) it

---

compliance with Sections 5353, 5053, 5054, and 5055 of the Welfare and Institutions Code.

"If, after a hearing and examination, the judge shall find that the defendant charged is a narcotic drug addict, or by reason of repeated use of narcotics is in imminent danger of becoming addicted thereto, and is not ineligible for the program under the application of Section 6452 hereof, he shall make an order committing such defendant to the custody of the Director of Corrections for a period of five years, except as this chapter permits earlier discharge. If, upon the hearing, the judge shall find that the defendant is not a narcotic drug addict and is not in imminent danger of becoming addicted to narcotics, he shall so certify and return the defendant to the municipal or justice court which certified such defendant to the superior court for such further proceedings as the judge of such municipal or justice court deems warranted."

[2]As hereinafter explained in more detail, petitioner unsuccessfully attempted to appeal from (1) the denial of his motion for new trial in the municipal court and that court's order certifying him to the superior court, and (2) the order of commitment entered by the superior court pursuant to Penal Code section 6450.

provides criminal penalties for an illness—narcotics addiction—thus imposing cruel and unusual punishment within the meaning of *Robinson* v. *California* (1962) 370 U.S. 660 [82 S.Ct. 1417, 8 L.Ed.2d 758] ; (2) it denies him a jury trial in the superior court on the issue of addiction while granting the opportunity to demand such a trial to other misdemeanants, thus depriving him of equal protection of the laws; and (3) its operative terms are vague and indefinite. We shall consider these contentions severally in the order stated.

*Asserted Imposition of Cruel and Unusual Punishment.* In *Robinson* v. *California* (1962), *supra,* 370 U.S. 660 [82 S.Ct. 1417, 8 L.Ed.2d 758], the United States Supreme Court held unconstitutional as there applied the provision of Health and Safety Code section 11721 making it a criminal offense to "be addicted to the use of narcotics."[3] The precise language of the subject holding is as follows (at pp. 1420-1421 [2] of 82 S. Ct.) : "We hold that a state law which *imprisons* a person thus afflicted *as a criminal,* even though he has never touched any narcotic drug *within the State* or been guilty of any irregular behavior *there,* inflicts a cruel and unusual punishment in violation of the Fourteenth Amendment." (Italics added.) Yet in that decision (at p. 1419 of 82 S. Ct.) the high court recognized "The broad power of a State to regulate the narcotic drugs traffic *within its borders*" (italics added), and observed that "Such regulation, it can be assumed, could take a variety of valid forms. A State might impose criminal sanctions, for example, against the unauthorized manufacture, prescription, sale, purchase, or possession of narcotics within its borders. In the interest of discouraging the violation of such laws, or in the interest of the general health or welfare of its inhabitants, a State might establish *a program of compul-*

---

[3]Health and Safety Code section 11721 provides in full: "No person shall use, or be under the influence of, or be addicted to the use of narcotics, excepting when administered by or under the direction of a person licensed by the State to prescribe and administer narcotics. It shall be the burden of the defense to show that it comes within the exception. Any person convicted of violating any provision of this section is guilty of a misdemeanor and shall be sentenced to serve a term of not less than 90 days nor more than one year in the county jail. The court may place a person convicted hereunder on probation for a period not to exceed five years and shall in all cases in which probation is granted require as a condition thereof that such person be confined in the county jail for at least 90 days. In no event does the court have the power to absolve a person who violates this section from the obligation of spending at least 90 days in confinement in the county jail."

*sory treatment* for those addicted to narcotics.[4] Such a program of treatment might require *periods of involuntary confinement.* And *penal sanctions* might be imposed for failure to comply with established *compulsory treatment* procedures.'' (Italics added.)

We recognize at once that an essential part of the procedural foundation for petitioner's current restraint is his conviction of violating Health and Safety Code section 11721. We note also that petitioner's ''status'' or ''chronic condition'' of being (in California) unlawfully ''addicted to the use of narcotics'' (see *Robinson* v. *California* (1962), *supra,* 370 U.S. 660 [82 S.Ct. 1417, 1420, 8 L.Ed.2d 758]) is considered to constitute a sufficient ground for conviction of violating section 11721 and therefore to prima facie establish the status of eligibility for initiation of the procedures contemplated by Penal Code section 6450. The case at bench, however, differs from *Robinson* in these, among other, vital respects: (1) no judgment of conviction of violating Health and Safety Code section 11721 has here been entered; (2) petitioner is not being held under any penal sanction— rather, the criminal action is suspended; and (3) he is being held under involuntary restraint for compulsory treatment and rehabilitation procedures as provided by Penal Code section 6450.

The issue is whether the statutory scheme here challenged (a) ''imprisons'' petitioner ''as a criminal,'' or (b) constitutes ''compulsory treatment'' of petitioner as a sick person requiring ''periods of involuntary confinement.'' If the former, it would be unconstitutional under *Robinson* as cruel and unusual punishment (U.S. Const., 8th and 14th Amends.; Cal. Const., art I, § 6) ; if the latter, it would be valid under the same decision as a constitutionally permissible exercise of the state's power to regulate the narcotic drug traffic.[5]

The criteria by which this issue is to be determined, how-

---

[4]In a footnote at this point the high court comments (at p. 1419 of 82 S.Ct., fn. 7), ''California appears to have established just such a program in §§ 5350-5361 of its Welfare and Institutions Code. The record contains no explanation of why the *civil procedures* authorized by this legislation were not utilized in the present case.'' (Italics added.) A possible explanation will be given (*post,* pp. 148-149) for the failure of the Welfare and Institutions Code program to solve the problem of narcotics addiction in California.

[5]The subject statute was not enacted in response to *Robinson* v. *California* (1962), *supra,* as it preceded that decision by approximately one year. The high federal court, however, did not have before it a case arising out of the application of the subject statute.

ever, are not so easily defined. In *Robinson* little difficulty was experienced by the majority in holding on the issues then before them that Health and Safety Code section 11721 (*ante*, fn. 3) imposed criminal penalties, in view of that statute's provision that any person "convicted" of a violation thereof "is guilty of a misdemeanor" and shall be "sentenced to serve" a term of "not less than 90 days nor more than one year in the county jail." No such provision appears in the measure (Pen. Code, § 6450) under which petitioner is currently restrained. Rather, analysis of the present statute—its origin, purpose, terms, operation, and effect—discloses not just one but a number of factors to be considered in this connection, of varying relevance and weight.

■ 1. To begin with, we observe that the Legislature placed the subject statute in title 7 ("Administration of the State Correctional System") of part III ("Of Imprisonment and the Death Penalty") of the Penal Code. It is contended that this choice of code setting evidences a legislative intent to treat as a penal sanction the confinement under which petitioner is held. But while there may be some significance in the Legislature's choice of codification in the Penal Code rather than, for example, the Welfare and Institutions Code, the particular divisional headings used carry little weight in view of the express declaration (Pen. Code, § 10004) that "Division, chapter, article, and section headings contained herein shall not be deemed to govern, limit, modify or in any manner affect the scope, meaning or intent of the provisions of any division, chapter, article or section hereof." (See *In re Halcomb* (1942) 21 Cal.2d 126, 130 [3] [130 P.2d 384].)

■ 2. Nor is much guidance to be found in the general statutory definitions. Penal Code section 17 declares in part that "A felony is a crime which is punishable . . . by imprisonment in the state prison." Section 1202a provides in part that "If the judgment is for imprisonment in the State prison the judgment shall direct that the defendant be delivered into the custody of the Director of Corrections at the State prison. . . ." On this basis it is argued that a person committed under Penal Code section 6450 (*ante,* fn. 1) is actually undergoing imprisonment in a state prison for a felony because he has been delivered "into the custody of the Director of Corrections." The fault in such inverse logic is apparent: it does not follow from section 1202a that *all* persons who are

138

delivered "into the custody of the Director of Corrections" are necessarily defendants under a judgment of imprisonment in a state prison, or that the confinement is a penal restraint.

 Similarly, there appears to be no compelling force in the argument that petitioner should be deemed confined in a penal institution because of the language of Penal Code section 6082, which provides: "References in this title [i.e., title 7, which now includes the statute under attack] . . . to prisons refer to all facilities, camps, hospitals and institutions for the confinement, treatment, employment, training and discipline of persons in the legal custody of the Department of Corrections." There is no reference to "prison" in the subject statute; and it would distort the general definitional purpose of section 6082, which was enacted in 1944, to squeeze from it a legislative intent to treat and operate as a penal institution the special facility (California Rehabilitation Center) set up 17 years later for the rehabilitation of narcotics addicts.[6] The latter facility, moreover, is not among those listed as a prison by the Legislature in chapter 1 ("Establishment of State Prisons"), title 1, of part III of the Penal Code.

 3. Petitioner next stresses the fact that he is committed under the subject statute "to the custody of the Director of Corrections" (§ 6450) and is confined in the California Rehabilitation Center, "an institution . . . under the jurisdiction of the Department of Corrections" (§ 6550). We note also that the statute creating the California Rehabilitation Center vests considerable authority for its management in the Director of Corrections.[7] It is contended that such authority is incompatible with the concept of nonpenal confinement. An examination of that portion of the statute creating the California Rehabilitation Center (ch. 12, tit. 7, pt. III, comprising §§ 6550-6555) reveals, however, that it is closely modelled on

[6] It is noteworthy that section 6082 does not refer to facilities for the *rehabilitation* of persons in the custody of the Department of Corrections, as the subject statute does repeatedly (Pen. Code, §§ 6400, 6453, 6500, 6551).

[7] Thus, section 6553 provides: "The Director of Corrections shall make rules and regulations for the government of the California Rehabilitation Center and the management of its affairs."

Section 6555 provides: "The supervision, management and control of the California Rehabilitation Center and the responsibility for the care, custody, training, discipline, employment and treatment of the persons confined therein are vested in the Director of Corrections. The provisions of Part 3 of this code apply to said institution as a prison under the jurisdiction of the Department of Corrections and to the persons confined therein *insofar as such provisions may be applicable.*" (Italics added.)

the statute which set up the California Medical Facility at Vacaville (ch. 8, tit. 7, pt. III, comprising §§ 6100-6106).[8] We have recently observed (*In re Cathey* (1961) 55 Cal.2d 679, 690 [9] [12 Cal.Rptr. 762, 361 P.2d 426]) that "The California Medical Facility at Vacaville indubitably is 'a state hospital for the care and treatment of [persons specified in § 6102, including those who are "4. Addicted to the use of narcotics"] . . . .' "

Nor should we deem controlling the fact that the California Rehabilitation Center is not placed under the jurisdiction of, for example, the Director of Mental Hygiene. Other instances of civil commitment to institutions under the jurisdiction of the Director of Corrections are easily found in the codes. Thus, in the Sexual Psychopathy Law it is expressly provided that "The Director of Mental Hygiene, *with the approval of the Director of Corrections* and the Director of Finance, may provide on the grounds of *a state institution or institutions under the jurisdiction of the Department of Corrections* or the Department of Mental Hygiene one or more institutional units to be used for the custodial care and treatment of sexual psychopaths. *Each such unit shall be administered in the manner provided by law for the government of the institution in which such unit is established.*" (Italics added.) (Welf. & Inst. Code, § 5518.) Under that provision a person committed as a sexual psychopath—originally in the custody of the Director of Mental Hygiene—is not being punished but nevertheless may find himself "in San Quentin, possibly for life" (*People* v. *Levy* (1957) 151 Cal.App.2d 460, 468 [5] [311 P.2d 897]). Yet such confinement is constitutionally permissible (see *Minnesota* ex rel. *Pearson* v. *Probate Court* (1940) 309 U.S. 270, 274-276 [60 S.Ct. 523, 84 L.Ed. 744, 126 A.L.R. 530]), and we have repeatedly held that "Sexual psychopathy proceedings are not criminal actions but special proceedings of a civil nature." (*People* v. *Gross* (1955) 44 Cal.2d 859, 860 [1] [285 P.2d 630]; accord, *Gross* v. *Superior Court* (1954) 42 Cal.2d 816, 820 [2] [270 P.2d 1025]; *People* v. *Howerton* (1953) 40 Cal.2d 217, 219 [3] [253 P.2d 8]; *People* v. *McCracken* (1952) 39 Cal.2d 336, 344 [4a]-346 [4b] [246 P.2d 913].) Similarly, even under the admittedly civil proceed-

---

[8]For example, except for the different name of the facility, sections 6553 and 6555 (*ante*, fn. 7) are almost verbatim reproductions of, respectively, sections 6104 and 6106.

ings of the Habit-Forming Drug Addicts Law in the Welfare and Institutions Code (div. 6, pt. 1, ch. 3, art. 2), a person "so far addicted to the intemperate use of habit forming drugs . . . as to have lost the power of self-control" may legally be "confined in a regional jail camp maintained by the Department of Corrections" (*id.*, 5404); yet such jail camps are established and operated by, and subject to the rules and regulations of, the Director of Corrections (Pen. Code, §§ 6300-6302).

4. Petitioner stresses the fact that his commitment is for a minimum of six months (Pen. Code, § 6403) and a maximum of five years (§ 6450, *ante*, fn. 1; see also § 6506, which provides the same maximum in cases of persons not charged with crime, including (as provided in § 6500) "any person who believes himself to be addicted or about to become addicted [to the unlawful use of narcotics]" and who therefore reports his belief to the designated officer). It is argued that neither the minimum nor the maximum is in any way related to the treatment or rehabilitation of the addict as a sick person, and hence that these requirements show a legislative intent to imprison the addict as a criminal. While superficially appealing, the argument does not withstand analysis in the light of the facts of narcotics addiction and rehabilitation.

First, there is medical evidence that the addict will benefit from a minimum period of confinement and control during which he is deprived of narcotics, thus permitting the withdrawal symptoms to run their course and alleviate at least his physiological dependence on drugs. In recognition of this fact, the Legislature has long provided for just such a minimum term of confinement under the Narcotic Drug Addicts Law of the Welfare and Institutions Code (div. 6, pt. 1, ch. 3, art. 1, esp. §§ 5355, 5355.7, and 5360)—the provisions of which were characterized as "civil procedures" by the United States Supreme Court in *Robinson* v. *California* (1962), *supra*, 370 U.S. 660 [82 S.Ct. 1417, 1419, 8 L.Ed.2d 758], footnote 7 (see also *id.* at p. 1426 of 82 S.Ct. [concurring opinion of Douglas, J.]). Once it is conceded that *some* minimum period of confinement of the narcotics addict is constitutionally permissible, the precise length of that period is largely a matter for the reasonable judgment of the Legislature. Here that period is fixed at six months. It is true that the above cited provisions of the Welfare and Institutions Code (§§ 5355 et seq.) fix the period at three months, but the Legislature is

allowed some leeway in translating into exact figures such medically imprecise concepts as the minimum beneficial term of confinement. Indeed, these same Welfare and Institutions Code provisions originally fixed the minimum at eight months (see former § 5355, based on Stats. 1927, ch. 89, § 3, p. 150); and at the federal narcotics hospitals at Lexington and Fort Worth the recommended minimum period of confinement believed necessary for rehabilitation is four to six months (see Drug Addiction: Crime or Disease? (Interim and Final Reports of the Joint Committee of the American Bar Association and the American Medical Association on Narcotic Drugs) (1961), Appendix A, p. 87; Winick, *Narcotics Addiction and Its Treatment* (1957), 22 Law & Contemp. Prob. 9, 23-24, quoted in *Robinson* v. *California* (1962), *supra*, 370 U.S. 660 [82 S.Ct. 1417, 1424, 8 L.Ed.2d 758] [concurring opinion]). In the circumstances, the Legislature's choice of the figure of six months does not appear to be unreasonable.

Second, the fact that a maximum of five years is placed on the term of confinement does not make it any the less a confinement that is essentially for an indeterminate period. Each of the relevant sections of the subject statute provides that the addict shall be committed for the fixed period "except as this chapter permits earlier discharge." (Pen. Code, §§ 6450, 6451, 6506.) The proviso refers, of course, to the procedures set up for parole (§ 6403) and subsequent discharge from the program (§ 6520). Similarly indeterminate commitments are authorized for narcotic drug addicts confined under Welfare and Institutions Code section 5355 ("for an indeterminate period of not less than three months nor more than two years");[9] and indeterminate commitments without fixed maximum terms are provided for mentally ill persons (*id.* § 5100), sexual psychopaths (*id.* §§ 5512, 5518), and defective or psychopathic delinquents (*id.* § 7058). Thus the use of the device of indeterminate commitment in the subject statute appears neither novel nor invalid per se.

▆▆▆ For our purposes the crucial question on this phase of the case is whether there may be judicial review of the

[9]It is of interest that among the "recommendations [which] would assist the Department of Mental Hygiene to institute an effective program of rehabilitation and treatment of all civilly committed narcotics addicts," the Special Study Commission on Narcotics recommended that Welfare and Institutions Code section 5355 be amended to provide for commitment for not less than three months "*nor more than five years.*" (Final Report of the Special Study Commission on Narcotics (1961), pp. 22-23.)

administrative decision as to when an "earlier discharge" shall be permitted. The subject statute makes no express provision for judicial review—but neither is there such a provision in the Welfare and Institutions Code procedure for the commitment of narcotic drug addicts (see, e.g., Welf. & Inst. Code, § 5355.7). It is true that a person committed under the latter procedure may assert the general right to a writ of habeas corpus granted to all patients in state mental hospitals by Welfare and Institutions Code section 6620.[10] Yet that right flows not from the enactment of section 6620 but from the basic constitutional guarantee that "The privilege of the writ of habeas corpus shall not be suspended. . . ." (U.S. Const., art. I, § 9, cl. 2; Cal. Const., art. I, § 5.) A person committed under the subject statute as a narcotics addict is equally entitled to assert his constitutional right to a writ of habeas corpus to inquire into the fact of his addiction or imminent danger of addiction. Thus, in *In re Goldie* (1917) 35 Cal.App. 341 [169 P. 925], a woman committed to a state hospital as a narcotics addict under the Habit-Forming Drug Addicts Law (former Pol. Code, § 2185c, now Welf. & Inst. Code, div. 6, pt. 1, ch. 3, art. 2) sought discharge on habeas corpus on the ground that she had entirely recovered from the use of narcotics. The appellate court reviewed the provisions of former Political Code section 2189 (now Welf. & Inst. Code, § 6725 et seq.) and concluded that "The Legislature has either intentionally or inadvertently failed to provide that a person committed for excessive use of narcotics, when claiming to be recovered and is refused a discharge by the superintendent of the hospital, may have this question of fact determined by the method prescribed for the insane in [Pol. Code] section 2189. . . .

"It follows that as the statute has given the petitioner no specific remedy for having the question of her recovery determined, the writ of *habeas corpus* is open to her." (*Id.* at p. 343.)

---

[10]Welfare and Institutions Code section 6620 provides: "Any person in custody as an insane or incompetent person is entitled to a writ of habeas corpus, upon a proper application made by the Department of Mental Hygiene, by such person, or by a relative or friend in his behalf to the judge of the superior court of the county in which the hospital is located. Upon the return of the writ, the fact of his insanity or incompetency shall be inquired into and determined. The medical history of the person as it appears in the clinical records shall be given in evidence, and the superintendent in charge of the state hospital wherein the person is held in custody and any other person who has knowledge of the facts shall be sworn and shall testify relative to the mental condition of the person."

When the indeterminate commitment aspect of the subject statute is thus viewed in its proper light, there is obviously no merit in petitioner's further contention that he has been "sentenced to serve five years" for a misdemeanor in violation of Penal Code section 19a (one-year maximum for misdemeanors).

5. It will be observed, however, that whereas the maximum period of confinement of a person committed under Penal Code section 6450 (such as petitioner here) is five years, that maximum is fixed at ten years in the case of one committed under section 6451 (applicable to a defendant convicted of "any crime in any superior court"). It is contended that this longer maximum term for felons can be justified only as a penal sanction. But "It is generally accepted that addiction is largely the result of personal inadequacy, emotional instability, and social maladjustment." (Eldridge, Narcotics and The Law (1962), p. 123.) As the author points out (*ibid.*, fn. 3), "Such causal factors actually play a large part in most criminal activity." If a principal cause of narcotics addiction is the psycho-social maladjustment of the user, and if a person convicted of a felony tends to suffer from greater psycho-social maladjustment than one convicted of a misdemeanor, then it would not seem unreasonable to expect that a longer period of readjustment and rehabilitation may be necessary for the felon-addict than for the misdemeanant-addict.

6. Petitioner also emphasizes the language of Penal Code section 6401, which declares that "Every person confined pursuant to this chapter [i.e., ch. 11, comprising §§ 6400-6521] shall be deemed a prisoner committed to a state prison for the purposes of the laws punishing escape." Yet while the choice of words may be significant, it is the stated purpose of this purely definitional provision that should control. If the success of the addict's rehabilitation depends, at least in the early stages, on isolating him from access to illegal narcotics, it would not seem unreasonable to provide a strong deterrent against his attempting to escape during that period. The use of criminal penalties for this purpose may be found in other, admittedly civil, procedures such as the Sexual Psychopath Law (Welf. & Inst. Code, § 5522) and the Defective or Psychopathic Delinquents Law (*id.*, § 7069), and is constitutionally permissible under *Robinson* v. *California* (1962), *supra,* 370 U.S. 660 [82 S.Ct.

144

1417, 1419, 8 L.Ed.2d 758] ["penal sanctions might be imposed for failure to comply with established compulsory treatment procedures"].

 7. We stated hereinabove that confinement under the subject statute is essentially for an indeterminate period in view of the procedures set up for parole (§ 6403) and discharge (§ 6520).[11] It is contended that a legislative intent to treat petitioner's confinement as a penal sanction is demonstrated by the fact that the subject statute vests primary discretion for the granting of paroles and the recommending of discharges in the Adult Authority, the agency empowered to grant paroles and fix sentences for persons "committed to a state prison" (Pen. Code, § 5077). As to parole, however, a careful reading of the statute shows that while it provides (and reasonably so) that persons paroled thereunder are "subject to being retaken and reconfined in the same manner as other parolees are retaken," it does *not* require that the rules and regulations under which parole is administered be the same as those enforced in cases of parole from state prison (see Pen. Code, §§ 3052, 3053).[12] Indeed, section 6404 of the subject statute provides for such specific parole rules as "periodic and surprise testing for narcotic use," "counseling," "return to *inpatient status*" at the California Rehabilitation Center if relapse occurs, and the establishment of "a halfway house in a large metropolitan area as a pilot project in order to determine the effectiveness of such control upon the addict's rehabilitation, particularly

[11]The Superintendent of the California Rehabilitation Center has reported that the projected average minimum period of confinement "will probably be around 9 months." (Proceedings of the Institute on the Problem of Narcotic Addiction (1962), p. 18.) The parties in the case at bench have stipulated that as of December 20, 1962, some 110 persons committed under this program had already been paroled.

The fact that sections 6403 and 6404 use the term, "parole," is not of itself significant. The same term is used throughout the civil commitment statutes of the Welfare and Institutions Code as an equivalent to "leave of absence." (See e.g., Welf. & Inst. Code, § 5355.7 [narcotic drug addicts], § 5406 [habit-forming drug addicts, dipsomaniacs and inebriates], §§ 6726-6734 [mentally ill persons in general], § 7066 [defective or psychopathic delinquents], § 7105 [chronic inebriates]; cf. § 6725.5.)

[12]By contrast, in the Habit-Forming Drug Addicts Law of the Welfare and Institutions Code (div. 6, pt. 1, ch. 3, art. 2) it is expressly provided (*id.*, § 5406) that "In the event that the person [found to be "so far addicted to the intemperate use of habit forming drugs . . . as to have lost the power of self-control"] shall have been committed to an industrial farm or industrial road camp or branch of the county jail . . . he may . . . be paroled by the county board of parole commissioners *in the same manner as prisoners in county jails are paroled*." (Italics added.)

upon his release from the narcotic detention and treatment facility.'' (Italics added.)[13] These rules appear to be designed to meet the particular needs of an addict in the later stages of the process of rehabilitation rather than to evidence a legislative intent that the prior confinement constitute a penal sanction.

As to discharge from the program, the principal complaint appears to be that the statute (§ 6520) provides that ''In any case where the criminal charges are not dismissed [after discharge] and the defendant is sentenced thereon, time served while under commitment pursuant to Article 2 of this chapter [i.e., §§ 6450-6454] shall be credited on such sentence.'' It is argued that this provision is significant, since similar credit for time served is not allowed to the rehabilitated sexual psychopath who is required to serve a penal term after discharge from the custody of the Director of Mental Hygiene. (See Welf. & Inst. Code, §§ 5517, 5518, 5519.) The argument lacks persuasive force; if anything, the provision in question discloses a humane concern for the realities of the situation.

Some of the foregoing provisions of the subject statute, as has been shown, have arguably ''criminal'' overtones—although in virtually each instance similar provisions may be found in the civil commitment procedures of the Welfare and Institutions Code. We turn now to provisions of the subject statute which can only be viewed as civil in nature, purpose, and effect.

1. At the outset of the statute, section 6400 declares its legislative purpose: ''The narcotic detention, treatment and rehabilitation facility referred to herein shall be one within the Department of Corrections *whose principal purpose shall be the receiving, segregation, confinement, employment, education, treatment and rehabilitation of persons* under custody of the Department of Corrections or any agency thereof *who are or have been addicted to narcotics or who by reason of repeated use of narcotics are in imminent danger of becoming addicted.*'' (Italics added.) An identical declara-

---

[13]Other aspects of the projected parole program include the use of special criteria for judging parole readiness, and specially trained parole agents who will undertake prerelease planning with the prospective parolees and thereafter will supervise relatively small caseloads of 30 parolees each. (See Narcotics: Problems, Programs, Proposals—A California Summary (1962), pp. 27, 30.)

tion of purpose is made in chapter 12 (§ 6551), which sets up the California Rehabilitation Center.[14]

2. The commitment procedures do not involve trial by jury as in criminal cases, but rather incorporate the special civil procedures of the Welfare and Institutions Code. Section 6450 (*ante,* fn. 1) provides that "Proceedings shall be conducted in substantial compliance with Sections 5353, 5053, 5054, and 5055 of the Welfare and Institutions Code." Section 5353 of the latter code is part of the Narcotic Drug Addicts Law characterized by the United States Supreme Court (*Robinson* v. *California* (1962), *supra,* 370 U.S. 660 [82 S.Ct. 1417, 1419, fn. 7, 8 L.Ed.2d 758]) as civil in nature. Sections 5053, 5054, and 5055 of the Welfare and Institutions Code are part of the general commitment provisions for mentally ill persons (div. 6, pt. 1, ch. 1), and are also incorporated by reference in the Narcotic Drug Addicts Law (Welf. & Inst. Code, § 5354). Taken together, these sections ensure that the constitutional rights of the person to be committed are protected. They provide, for example, that he (1) shall be taken before a judge and informed of his rights, (2) shall be given ample opportunity to produce witnesses in his behalf and compel their attendance by subpoena, including at least two medical examiners, (3) shall be personally present at the hearing in open court, and (4) shall have court-appointed counsel if he is financially unable to employ counsel.

3. Similar commitment steps are spelled out in article 3 of the subject statute (§ 6500-6505), dealing with persons not charged with a crime. Of particular interest here is the provision whereby *voluntary self-commitment* proceedings may be instituted by "any person who believes himself to be addicted or about to become addicted" (§ 6500).

4. The certificate of medical examiners here filed pursuant to Welfare and Institutions Code section 5055, as well as the subsequent order of commitment of the superior court, is entitled "The People of the State of California *For the Best Interest and Protection of Society and [the person to be committed]* . . ., An Alleged Narcotic Drug Addict." (Italics added.) (Compare Welf. & Inst. Code, §§ 5050.1, 5100.)

5. Also significant in this connection is the provision of the subject statute (§ 6452) declaring ineligible for the program

---

[14]See also the legislative declaration in Health and Safety Code section 11728: "The rehabilitation of narcotic addicts and the prevention of continued addiction to narcotics is a matter of statewide concern."

all persons who have previously been convicted of specified crimes of violence or serious narcotics offenses. Similar legislative concern to avoid custodial problems in a state hospital is reflected in Welfare and Institutions Code section 5355, which provides that a narcotic drug addict shall not be committed if, *inter alia,* he is shown to be "of bad repute or bad character" (see also *id.,* § 5404); and compare section 6451 of the subject statute, which provides in part that proceedings for the commitment of a person convicted of crime in a superior court shall not be instituted if "in the opinion of the judge the defendant's record and probation report indicate such a pattern of criminality that he does not constitute a fit subject for commitment under this section."

6. Implementing the latter provisions is section 6453 of the statute, which requires the person committed to be returned to court if at any time it is determined that he "is not a fit subject for confinement or treatment in such narcotic detention, treatment and rehabilitation facility" (see also § 6509).

7. It is also to be observed that section 6405 of the subject statute declares that "The Director of the Department of Corrections shall engage in a program of research in the detention, treatment and rehabilitation of narcotic addicts." (Compare Welf. & Inst. Code, §§ 5650-5653, providing for "research into the causes and cures of sexual deviation.")

Finally, petitioner makes various allegations concerning the actual conditions of his confinement, e.g., (1) that he was processed through the Reception Guidance Center at Chino; (2) that his fingerprints and photographs were taken and he was ordered to shave off his moustache; and (3) that his mail is censored and he is restricted in the number of letters he may send and the visitors he may have. In their return to the order to show cause the People admit most of these allegations but explain (1) that petitioner was processed "in a special unit" of the Reception Guidance Center set aside for persons committed under the subject statute to the California Rehabilitation Center; (2) that the fingerprinting, photographing, and shaving were done "for purposes of identification and to prevent the concealment of his identification"; and (3) that petitioner's mail is censored and his visitors restricted "for the purpose of preventing the introduction or arrangements for the introduction of narcotics into the Rehabilitation Center." (Compare Welf. & Inst. Code, § 7502, which empowers the Department of

Mental Hygiene to "make such regulations in regard to the correspondence of the inmates in custody in [state hospitals] as in its judgment will promote their interests.")

The conclusional allegation is also made that "To petitioner's knowledge, DE LA O is being incarcerated and treated in the same manner as if he were a felon." It appears, however, that the branch of the California Rehabilitation Center where petitioner is confined[15] is physically and administratively distinct from the other facilities at Chino and consists of 16 buildings including dormitories, gymnasium, mess hall, academic and vocational buildings, and others; that the California Rehabilitation Center employs a full-time psychiatrist and professionally trained counselors and therapists;[16] and that petitioner is given daily group therapy and twice weekly intensive therapy in small units of not more than 15 men, all under the direction of trained counselors.[17] In addition, the California Rehabilitation Center provides a specially selected vocational and academic program.[18]

It is appropriate here to draw some conclusions. ▐▐▐ From the declarations of purpose and other provisions discussed hereinabove it appears that in enacting the subject statute the Legislature intended to create a new program for the confinement (which in truth is a quarantine rather than penal sanction), treatment, and rehabilitation of narcotics addicts. Why was a new statutory scheme necessary in view of the existing civil procedures of the Narcotic Drug Addicts Law (Welf. & Inst. Code, §§ 5350-5361)? An answer is provided by the Special Study Commission on Nar-

---

[15]The People state that the present facilities are only temporarily in use pending the early activation of a permanent facility at Corona.

[16]The parties have stipulated that as of December 20, 1962, there were 1,262 persons confined in the California Rehabilitation Center, and 38 counselors to carry out the program. This is a ratio of approximately one counselor to every 33 persons, whereas (as the People point out) in most California prison facilities the ratio is one to every 400. It is further stipulated that all the counselors in the California Rehabilitation Center hold Bachelor's Degrees (e.g., in such areas as psychology and sociology), that 13 also hold graduate degrees, and that 20 others have done substantial graduate work.

[17]By contrast, the People state that "at Chino and other California facilities, inmates are given only one hour of group counseling per week under the direction of a lay leader instead of a trained counselor."

[18]These and other aspects of the actual and planned operation of the California Rehabilitation Center are set out fully in Proceedings of the Institute on the Problem of Narcotic Addiction (1962), and in Narcotics: Problems, Programs, Proposals—A California Summary (1962), pp. 22-31.

cotics, which reported to the Legislature in 1961 that "Although the law [i.e., Welf. & Inst. Code, §§ 5351, 5355] clearly provides that *any addict* may be committed to a state hospital for treatment after a hearing, the Department of Mental Hygiene is presently accepting only persons who voluntarily request such a commitment. All requests for civil commitments from law enforcement officers, relatives, or other persons interested in trying to help an addict receive treatment are refused." (Italics in original.) (Final Report of the Special Study Commission on Narcotics (1961), p. 21.) The reason for this disuse of existing procedures was stated to be a lack of sufficient facilities in which to carry out a proper program of rehabilitation.[19] To remedy this lack the commission recommended the establishment of separate hospital facilities in the Department of Mental Hygiene with an adequate number of trained personnel to give proper care and treatment to persons civilly committed as narcotics addicts. (*Id.*, at pp. 22-23.)

The Legislature, as has been shown, created in response a program and an institution designed to achieve these goals, but then placed them under the direction and control of the Director of Corrections and codified the new statutory scheme in the Penal Code. The introduction of these external indicia of criminality was, in our view, both unnecessary and unfortunate, as they may well constitute those aspects of the program which are most resented by the persons committed (who should be explicitly designated as patients, without indicia of criminality) and most noticed by others on their return to society, thus producing a possibly negative effect on the chances of success. Mindful, however, of our duty to uphold every legislative enactment unless it is in any event palpably obnoxious to the Constitution, we are of the opinion that the demonstrably civil purpose, mechanism, and operation of the program outweigh its external "criminal" indicia, and hence that petitioner's commitment and confinement thereunder do not constitute cruel and

---

[19]The report continues (*ibid.*) "The State of California has nine hospitals for the mentally ill which also will accept court committed narcotics drug addicts for treatment. *Due to a lack of personnel and facilities very few addicts receive treatment under civil commitment* . . . California does not have a special hospital which devotes itself exclusively to the care and treatment of narcotics addicts. The Commission was informed by Dr. Daniel Blain, the Director of the Department of Mental Hygiene, that narcotics addicts are placed in the same wards or wings with the senile, the alcoholic, the psychotic and the mentally ill. There are *no separate facilities for narcotics addicts* in any of these hospitals. (Italics added.)

unusual punishment within the meaning of *Robinson* v. *California* (1962), *supra,* 370 U.S. 660 [82 S.Ct. 1417, 8 L.Ed. 2d 758].

Petitioner's remaining contentions require only brief discussion.

 *Asserted Denial of Equal Protection of the Laws.* Penal Code section 6450 provides further that "If a person committed pursuant to this section, after conviction of a misdemeanor *other than a violation of Section 11721 of the Health and Safety Code,* is dissatisfied with the order of the court, he may demand a hearing by a judge or jury in substantial compliance with the provisions of Section 5125 of the Welfare and Institutions Code." (Italics added.)[20] (It will be remembered that the basis for the certification in this case was conviction in the municipal court of a violation of Health and Safety Code section 11721.) Petitioner first contends that the above quoted provision of Penal Code section 6450 deprives him of his constitutional right to jury trial (U.S. Const., 6th amend.; Cal. Const., art. I, § 7). But certification to the superior court requires that the judge in the municipal court "shall adjourn the [criminal] proceedings [in this case, under Health & Saf. Code, § 11721] or suspend the imposition of the sentence" (Pen. Code, § 6450). Thus, after certification, no criminal action is being prosecuted against the defendant, and he has already had the right to a jury trial in the criminal action. The commitment procedures set up by the subject statute are in the nature of special civil proceedings unknown to the common law, and hence there is no right to jury trial unless it is given by the statute. This court has held, for example, that the constitutional guarantee of trial by jury does not extend to a person committed under the special civil procedures of the Habit-Forming Drug Addicts Law in (now) the Welfare and Institutions Code. (*In re Liggett* (1921) 187 Cal. 428, 430 [2] [202 P. 660].)

---

[20]Welfare and Institutions Code section 5125 provides that if one who has been committed to a hospital or sanitarium as a mentally ill person is dissatisfied with the order of commitment "he may, within 10 days after the making of such order, demand that the question of his mental illness be tried by a judge or by a jury in the superior court of the county in which he was committed or the order of detention was issued. Thereupon the court shall set the case for hearing at a date, or shall cause a jury to be summoned and to be in attendance at a date stated, not less than five nor more than 10 days from the date of the demand for a court or jury trial. The court shall adjudge whether the person is mentally ill, or if it is a trial by jury shall submit to the jury the question: Is the person mentally ill?"

▆▆▆▆ Petitioner also contends that in denying him (and all persons convicted under Health & Saf. Code, § 11721) a jury trial in the superior court on the issue of addiction while granting the opportunity to demand such a trial to other misdemeanants, the statute deprives him of equal protection of the laws (U.S. Const., 14th Amend.; Cal. Const., art. I, § 11; art. IV, § 25, cl. 2). The People seek to justify this classification by arguing that as Health and Safety Code section 11721 prohibits unlawfully using or being under the influence of or being "addicted to the use of narcotics" (*ante*, fn. 3), the Legislature could reasonably deny a second trial to those who have already had an opportunity to litigate the issue of addiction before a jury in the municipal court. Petitioner was charged with unlawful use of *and* addiction to narcotics; he waived jury trial and was found guilty as charged. He points out that in *People* v. *Williams* (1958) 164 Cal.App.2d Supp. 858, 862 [5] [331 P.2d 251], it was held that a conviction under a charge of unlawful use *and* addiction is sustained "if the evidence is sufficient to support a finding of guilty of *any one* of the acts denounced by the statute" (italics added); he urges, therefore, that his conviction of violating Health and Safety Code section 11721 cannot be given res judicata effect on the issue of addiction for the purposes of the subject statute.

The contention in the circumstances here is immaterial. There is no occasion to emphasize *Williams,* as that case does no more than recognize the plain language of the statute (Health & Saf. Code, § 11721) that "Any person convicted of violating *any provision* of this section is guilty of a misdemeanor." (Italics added.) Thus, the evidence is sufficient to support conviction if it shows that the person charged did within the territorial limits of the court's jurisdiction (see generally, as relevant to the subject prosecution, Pen. Code, § 777) commit any of the forbidden acts. The forbidden acts are to "use, or be under the influence of, or be addicted to the use of narcotics, excepting when administered by or under the direction of a person licensed by the State to prescribe and administer narcotics." These acts or conditions are important (for the procedures contemplated by Penal Code section 6450) simply as being preliminarily or tentatively indicative of a condition of the defendant; i.e., a condition which appears to be primarily one of illness rather than criminality. The existence of at least one of the conditions defined by section 11721 is necessarily established by the verdict of

"guilty," whether rendered by the municipal or justice court jury or by the judge when trial by jury is wavied.

But it is not the verdict of guilty which establishes the defendant's *right* or *liability* to the remedial procedures of Penal Code section 6450. The verdict of guilty (if not set aside, or if the action is not suspended) renders the defendant liable to penal sentence for the misdemeanor. It does not give him a right to have the criminal proceeding suspended without imposition of sentence. But it does give both him and the State a right to have the municipal or justice court judge, in the exercise of discretion, determine whether "it appears to [such judge] . . . that the defendant may be addicted or by reason of repeated use of narcotics may be in imminent danger of becoming addicted to narcotics"; and if the *judge* concludes that such condition does so appear to him then the duty which devolves upon him is mandatory: "such judge *shall* adjourn the proceedings or suspend the imposition of the sentence and certify the defendant to the superior court." (Italics added.) (Pen. Code, § 6450). That action saves the defendant (at least potentially) from any penal sanction for the act or condition with which he was penally charged, and thereafter the proceedings are held in the superior court and are civil in nature.

Obviously, one who has been convicted of violating (in California) Health and Safety Code section 11721, on any tenable interpretation of its language, has at least demonstrated some history of illegal narcotics use. As a basis for consideration for the civil and remedial procedures delineated by section 6450, conviction of any violation of section 11721 is sufficient. These benefits are potentially open to all persons on the same tests, and there is no denial here of equal protection of the law. Any conviction of violating section 11721 necessarily determines that the defendant charged did in California at the relevant time "wilfully and unlawfully use" or "be under the influence of, or be addicted to the [unlawful] use" of narcotics. The procedures defined by section 6450 are not intended as a punishment for unlawful use or condition; by contrast, they are provided as a remedy or curative treatment for one who "is a narcotic drug addict, or by reason of repeated use of narcotics is in imminent danger of becoming addicted thereto, and is not ineligible for the program. . . ." (As mentioned, *ante,* section 6452 declares ineligible all persons who have theretofore been convicted of certain crimes of violence or serious narcotics offenses.) In the circum-

stances petitioner fails to show that the line drawn by the Legislature is "palpably arbitrary and beyond rational doubt erroneous" (*State of California* v. *Industrial Acc. Com.,* (1957) 48 Cal.2d 365, 371 [1] [310 P.2d 7]).

 *Asserted Vagueness of Statute.* Petitioner also complains that the subject statute is "vague and indefinite," presumably with reference to the operative terms, "addict" and "imminent danger of becoming addicted." Section 6407 declares that " 'Narcotic addict' as used in this chapter refers to any person, whether adult or minor, who is addicted to the unlawful use of any narcotic as defined in Division 10 of the Health and Safety Code, except marijuana." No more refined definition is constitutionally required. Neither "addicted to" nor "imminent danger of becoming addicted" are technical terms of art. Words used in a statute are ordinarily to be construed according to the context and "the approved usage of the language" (Civ. Code, § 13), and "a statute is sufficiently certain if it employs words of long usage or with a common law meaning, 'notwithstanding an element of degree in the definition as to which estimates might differ' " (*Lorenson* v. *Superior Court* (1950) 35 Cal.2d 49, 60 [8] [216 P.2d 859]). Under these rules similar language of section 23105 of the Vehicle Code ("It is unlawful for any person who is *addicted to* the use . . . of narcotic drugs . . . to drive a vehicle upon any highway") has recently been held to have a commonly understood meaning[21] and hence to be sufficiently certain to comply with due process requirements. (*People* v. *Kimbley* (1961) 189 Cal.App.2d 300, 303 [1]-307 [10] [11 Cal.Rptr. 519].) The same reasoning applies to the equally nontechnical phrase, "imminent danger of becoming addicted."

### Denial of Appellate Review

Petitioner contends that he was wrongfully denied appellate review of (1) his conviction in the municipal court and (2) the superior court's order committing him to the California Rehabilitation Center.

*The Municipal Court Conviction.* On April 5, 1962, petitioner was found guilty in the municipal court of the charged violation of Health and Safety Code section 11721. The matter was continued from time to time until May 15, when a

---

[21]Thus Webster's defines "addicted" as "devoted or given up" or "strongly disposed or inclined," and gives as definitional examples of "addict" the phrases, "a morphine addict," "a barbiturate addict." (Webster's New Internat. Dict. (3d ed. 1961), p. 24.)

motion for new trial was made and denied. The matter was again continued until May 22, when the municipal court on its own motion suspended the criminal proceedings and certified petitioner to the superior court pursuant to Penal Code section 6450 (*ante*, fn. 1). On the same day (May 22) petitioner, by his attorney, filed in the municipal court a notice of appeal from the "denial of motion for new trial" and from the "order certifying [petitioner] to superior court." On May 29 the hearing and examination provided under section 6450 was held in the superior court and petitioner was ordered committed to the custody of the Director of Corrections pursuant to that statute. On June 6 a certified copy of such superior court proceedings and order of commitment was filed in the municipal court, and on June 21 "All papers on appeal" on file in the municipal court were transmitted to the superior court.

On June 25 the appellate department of the superior court, on its own motion, issued an order directing petitioner to show cause "why his appeal should not be dismissed" on the grounds "(1) that the appeal from the order denying a new trial was premature, it having been filed before the defendant was committed to the Director of Corrections (see *People* v. *Baul*, 202 Cal.App.2d Supp. 877 [20 Cal.Rptr. 925]; and (2) that no appeal lies from the order certifying the defendant to the Superior Court. (Penal Code § 1466.)" A copy of this order to show cause was mailed on the same day (June 25) to petitioner's attorney of record. The order was returnable on July 12. On July 16 the appellate department made and entered an order reciting that its order to show cause "having been submitted without argument, written or oral," petitioner's appeal was dismissed for the reasons set forth in the text of the order to show cause (quoted hereinabove).

The order of the municipal court certifying petitioner to the superior court for further proceedings pursuant to section 6450 was a nonappealable interlocutory order, and hence petitioner's purported appeal therefrom was properly dismissed. The municipal court's order denying his motion for new trial *was* appealable under Penal Code section 1466, subdivision 2 (c);[22] but, as held in *People* v. *Baul*

---

[22]Penal Code section 1466 provides in part that appeals may be taken to the appellate department "in the following cases. . . .
"2. By the defendant: . . .

(1962), *supra,* 202 Cal.App.2d Supp. 877, 878 [1], under the latter statute it appears that an appeal may be taken from an order denying a motion for new trial in the present type of case *only when* the defendant has in fact been ''committed before final judgment'' as a narcotics addict. This construction of Penal Code section 1466 is supported by the relevant rules of court. Rule 182 prescribes generally that an appeal to the appellate department is taken by filing written notice of appeal ''within 10 days after the rendition of'' the judgment or order appealed from; but to preserve the right of appeal in cases where the superior court's order of commitment is entered more than 10 days after the municipal court's denial of the motion for new trial, rule 182 further provides by way of exception that ''an appeal from an order denying a motion for a new trial in cases where the defendant is committed before final judgment for sexual psychopathy, insanity, or narcotics addiction *may be taken within 10 days after* the making of such order *or* the defendant's commitment, *whichever is later.*'' (Italics added.) The purpose of the requirement that the defendant actually be committed before filing his notice of appeal is, manifestly, to avoid the preparation of unnecessary records, as the superior court judge might well find that ''the defendant is not a narcotic drug addict and is not in imminent danger of becoming addicted to narcotics,'' in which event the judge must ''so certify and return the defendant to the muncipal or justice court'' for further proceedings in the original criminal action. (Pen. Code § 6450.)

Accordingly, petitioner's purported notice of appeal filed in the municipal court on May 22, 1962, was premature; that notice should have been filed in the 10-day period following entry of the superior court's order of commitment on May 29. Rule 186 (b) declares that ''The superior court may for good cause relieve a party from a default occasioned by any failure to comply with these rules [i.e., rules 181-191], *except failure to give timely notice of appeal*'' (italics added). And whereas rule 31 (a), applicable to appeals from the superior court, specifically provides that a premature notice of appeal ''may, in the discretion of the reviewing court for good cause, be treated as filed immediately after the rendition of the judgment or the making of the order,'' no such provision is

---

'' (c) From an order denying a motion for a new trial in cases where *the defendant is committed before final judgment* for sexual psychopathy, insanity, or narcotics addiction; . . .'' (Italics added.)

to be found in the subject Rules on Appeal from Municipal Courts and Justice Courts in Criminal Cases. Indeed, rules 182 and 31 (a) were simultaneously amended effective September 15, 1961, to include in both the above quoted language relative to filing notice of appeal within 10 days after the defendant's commitment for sexual psychopathy, insanity, or narcotics addiction; yet no authorization to validate premature notices of appeal for good cause, such as is contained in rule 31 (a), was added at that time to rule 182. It follows that the appellate department properly dismissed petitioner's appeal as premature.

### The Superior Court's Order of Commitment

Petitioner also sought to appeal from the superior court's order committing him to the California Rehabilitation Center pursuant to the subject statute. Acting in propria persona, petitioner transmitted to the clerk of the superior court an apparently valid notice of appeal from that order. The clerk did not file the notice but sent petitioner a letter stating in part, "Receipt is acknowledged of your purported notice of appeal from the commitment made in the above numbered case pursuant to Section 6450 of the Penal Code." The clerk then correctly pointed out that "There are no provisions in this law for an appeal," and went on to suggest that "it is possible that it is an appealable order as an order [i.e., a final order] made in a special proceeding." The suggestion embodies the proper disposition of petitioner's notice of appeal: the commitment procedures set up by the subject statute are analogous to the civil commitment procedures of the Sexual Psychopathy Law, and by the same analogy and for the same reasons an original order of commitment under Penal Code section 6450 is "appealable as a final judgment in a special proceeding under section 963 of the Code of Civil Procedure." (*People* v. *Gross* (1955), *supra*, 44 Cal.2d 859, 860 [2], and cases there cited.) While uncertainty as to the appealability of such an order may justify extraordinary use of the remedy of habeas corpus (see *In re Bine* (1957) 47 Cal.2d 814, 818 [8] [306 P.2d 405]), it does not excuse the clerk's failure to file petitioner's notice of appeal. Accordingly, upon compliance with the pertinent rules of court, petitioner is entitled to have the superior court file his notice of appeal from that court's order of commitment. In favor of petitioner's right to press his appeal the filing shall be deemed timely.

It does not follow, however, that petitioner is now entitled

to be released from custody. The order to show cause is discharged and the petition for habeas corpus is denied.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., Tobriner, J., and Peek, J., concurred.