COMMONWEALTH *vs.* ARTHUR A. PAGE, JUNIOR.

Suffolk. April 6, 1959. — June 2, 1959.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Sex Offender. Constitutional Law,* Due process of law, Trial by jury, Sex offender.

In a proceeding under G. L. c. 123A, § 5, as amended by St. 1957, c. 772, § 4, to have the defendant committed, as a prisoner under sentence, to a treatment center for sex offenders purportedly established under c. 123A, § 2, as appearing in St. 1957, c. 772, § 1, by the commissioner of mental health at a prison, the judge should have granted a request by the defendant for a ruling that "if no treatment center has been established in fact . . . [under c. 123A] then the remaining provisions are inoperative until such center has been established," and a finding by the judge that the commissioner had established such treatment center was unwarranted, where there was uncontroverted evidence that the purported center was used only for diagnostic purposes, that persons committed there for observation or treatment were housed with the general prison population, that there was no separate staff for the treatment of sex offenders, and that the only treatment then available to persons committed to the purported center and not under diagnostic observation was the "program of group and individual psychiatric therapy for the total prison population which might include sex offenders." [316]

Confinement of a defendant, adjudged to be and committed as a sex offender under G. L. c. 123A, § 5, as amended by St. 1957, c. 772, § 4, at a prison where a treatment center had been purportedly but not actually established for the "care, treatment and rehabilitation" of sex offenders and there was no differentiation between sex offenders and convicted criminals as to restraints, discipline and regimen, was in fact penal in its effect upon the defendant and was not an application of a remedial, nonpenal statute not subject to the constitutional requirements pertaining to criminal cases. [317–318]

Exceptions taken by the defendant during the course of a proceeding under G. L. c. 123A, § 5, as amended by St. 1957, c. 772, § 4, leading to an order committing him to a treatment center for sex offenders purportedly but not actually established at a prison in which he had been incarcerated raised the issue of unconstitutional application of the statute to the defendant where it appeared that in fact he would be confined in the prison as a prisoner. [318]

A commitment of a defendant under G. L. c. 123A, § 5, as amended by St. 1957, c. 772, § 4, for an indefinite period to a treatment center for sex offenders purportedly established at a prison was invalid where it appeared that the treatment center had not actually been established there, that in fact the defendant's confinement there would be no different from that of the prisoners and would be penal, that, although the defendant while under sentence at the prison had been committed to the purported center for a limited period for diagnosis and had been reported by two psychiatrists to be a sex offender, the resulting proceeding leading to his indefinite commitment was commenced after he had completed serving his sentence and when he was not subject to be sentenced for any crime, and that he was adjudicated to be a sex offender, and the indefinite commitment was made, by a judge of the Superior Court after a hearing without jury following denial of a motion by the defendant for a jury trial. [318]


PETITION for commitment, filed in the Superior Court on October 28, 1957.

The case was heard by *Nagle*, J.

*Walter Powers, Jr.,* (*Raya S. Dreben* with him,) for the defendant.

*Joseph A. Melley,* Assistant District Attorney, for the Commonwealth.

WHITTEMORE, J. This bill of exceptions puts in issue the validity of the defendant's indefinite commitment to the treatment center for sex offenders at the Massachusetts Correctional Institution in Concord under the provisions of G. L. c. 123A, as amended by St. 1957, c. 772 (the statute), and on a petition filed by the district attorney under § 5 applicable to a "prisoner under sentence."

Statute 1957, c. 772, is the third of four enactments designed to furnish protection from sex offenders and facilities for their treatment and cure. Statute 1947, c. 683, provided for the commitment of persons having "psychopathic personality" to the custody of the department of mental health. Statute 1954, c. 686, established in that department a treat-

ment center for "the care, treatment and rehabilitation" of "sex offenders." In other relevant respects it was similar to the statute before us. Statute 1957, c. 772, made certain amendments in c. 123A as enacted in 1954. Statute 1958, c. 646, struck out c. 123A, as amended in 1957, and inserted a new chapter which makes important changes, but leaves the statutory scheme in its basic aspects much as it was when set up in 1954.

The statute in § 2 directs that the commissioner of mental health establish a treatment center at a correctional institution approved by the commissioner of correction, and authorizes branches at other correctional institutions. The statute permits confinement and treatment in the center of persons under sentence for an indefinite period after their sentences have ended. In the event of "transfer" to a center under § 4 of a person sentenced for a sex crime, pursuant to procedure initiated after conviction and before sentencing, the transfer under § 4 is to continue until the person is "discharged from said center as provided under section eight." In the case of a prisoner under sentence who is adjudicated a sex offender under § 5, the commitment is "until his release shall have been ordered by proper authority." Section 8 applies in terms to persons transferred under § 4 as well as those committed under § 5. But the discharge provision is imprecise in that, in the event of the necessary finding by the court or verdict by the jury that the person is no longer a sex offender, "the court shall order the *commitment* of such person to the center to be discharged, and the person shall be returned to the prison from which he was *transferred*" (emphasis supplied).

The bill of exceptions shows that on October 4, 1957, the defendant was a prisoner under sentence at the Massachusetts Correctional Institution in Concord and was to be discharged on the following day. On October 4, the district attorney reported to a judge of the Superior Court that the defendant appeared to be a sex offender as defined in the statute and moved that he be committed to the center in Concord, as the statute provides, for examination, diagnosis

and special treatment for a period not exceeding sixty days. The defendant was so committed on that day. The report of two psychiatrists stating their opinion that the defendant was a sex offender was filed October 25, 1957. On October 28, the district attorney filed the petition to have the defendant committed under the statute. On October 30, the defendant was brought into court, ordered to recognize in the sum of $10,000 with sureties for his appearance for a hearing on the petition, and in default of bail was committed to jail. Hearing was held on November 22, 1957. Prior to the taking of evidence the defendant excepted to the denial of his motion for a jury trial. The defendant further excepted to the denial of this requested ruling, among others: "If no treatment center has been established in fact, although required under said c. 123A, then the remaining provisions are inoperative until such center has been established."

The request should have been granted. The judge's finding that the commissioner of mental health had established a treatment center for sex offenders was not rightfully made on the uncontroverted evidence. The testimony of the official responsible for the center showed that the center had twelve beds and was used only for diagnostic purposes and that persons committed for observation or treatment were housed with the general prison population at the correctional institution in Concord. There was no separate staff for the treatment of sex offenders and the only treatment then available to persons committed to the center and not under diagnostic observation was the "program of group and individual psychiatric therapy for the total prison population which might include sex offenders."

Our cases show that statutes providing for custody, care and treatment of neglected or delinquent children, and persons suffering from mental illness are not penal, and the constitutional guaranty of a jury trial in criminal cases does not apply. *Farnham* v. *Pierce,* 141 Mass. 203, 204. *Dowdell, petitioner,* 169 Mass. 387, 389. *Robinson* v. *Commonwealth,* 242 Mass. 401, 403. *Sylvester* v. *Commonwealth,* 253 Mass.

244, 246–247. *Dubois, petitioner,* 331 Mass. 575, 578–579. See *People* v. *Lewis,* 260 N. Y. 171, app. dism. sub nom. *Lewis* v. *New York,* 289 U. S. 709; *Commonwealth* v. *Fisher,* 213 Pa. 48, 53–54; *Holmes' Appeal,* 379 Pa. 599, cert. den. sub nom. *In re Holmes,* 348 U. S. 973. Statutes providing for the custody and treatment of persons dangerous to themselves or others because of sexual tendencies have been sustained elsewhere on the same basis. *People* v. *McCracken,* 39 Cal. 2d 336, 344–346. *In re Keddy,* 105 Cal. App. 2d 215. *State* v. *Probate Court,* 205 Minn. 545, 556–557, affd. sub nom. *Minnesota* v. *Probate Court,* 309 U. S. 270. *In re Moulton,* 96 N. H. 370, 372. Compare *People* v. *Frontczak,* 286 Mich. 51; Rappeport, Determination of Delinquency in the Juvenile Court: A Suggested Approach, Wash. Univ. L. Q. 123 (1958); Mihm, A Re-examination of the Validity of our Sex Psychopath Statutes in the Light of Recent Appeal Cases and Experience, 44 Jour. Crim. L. 716, 730–736.

Notwithstanding that the center was to be maintained only at correctional institutions, we assume, without deciding, that the statute was nonpenal in character and under its provisions the commissioner of mental health could have so organized and operated the center that the restraints, discipline and regimen made applicable to the defendant would have been only such as would be appropriate for the custody, care and treatment of a sexually dangerous person not under sentence.[1]

But to be sustained as a nonpenal statute, in its application to the defendant, it is necessary that the remedial aspect of confinement thereunder have foundation in fact. It is not sufficient that the Legislature announce a remedial purpose if the consequences to the individual are penal. While we are not now called upon to state the standards which such a center must observe to fulfil its remedial purpose, we hold that a confinement in a prison which is undifferentiated

---

[1] We note the significant new provision in G. L. c. 123A, § 2, as amended in 1958, that "[t]he commissioner . . . may also establish branches of said center at any suitable facility of the department of mental health."

from the incarceration of convicted criminals is not remedial
so as to escape constitutional requirements of due process.
*In re Maddox,* 351 Mich. 358, 370. *White* v. *Reid,* 125 F.
Supp. 647, 649–650 (D. D. C.), *S. C.* 126 F. Supp. 867, 871.
See *Miller* v. *Overholser,* 206 F. 2d 415, 418–419 (D. C. Cir.);
*Benton* v. *Reid,* 231 F. 2d 780, 782–783 (D. C. Cir.). And
see *Jones* v. *Robbins,* 8 Gray, 329, 349–350; *Nolan's Case,*
122 Mass. 330, 332–333. Each of these cases arose on a
petition for a writ of habeas corpus. We think the issue of
unconstitutional application was equally available on excep-
tion taken in the course of the proceedings leading to the
order of commitment where the fact that confinement would
be in a prison as a prisoner was established. The record
shows that the defendant when not subject to be sentenced
for any crime was committed to prison without benefit of a
jury trial for an indefinite period beginning after he had
served the only sentence imposed on him. The commitment
was therefore invalid. Even if thereafter the center was
properly constituted, as to which the record is silent, the
invalidity would not be overcome.

In respect of remedial and protective action apart from
G. L. c. 123A for a person "in danger of causing physical
harm to himself or to others . . . or . . . likely to conduct
himself in a manner which clearly violates the established
laws, ordinances, conventions or morals of the community,"
see G. L. c. 123, §§ 1, 50, 51, as amended through St. 1955,
c. 637.

It is not necessary to consider the defendant's other
specifications of error.

*Exceptions sustained.*