COMMONWEALTH vs. GLENN DALE HOGAN.

Middlesex.    October 3, 1960. — November 9, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, &
CUTTER, JJ.

*Sex Offender. Superior Court*, Sex offender. *Practice, Civil*, Exceptions: exception to general finding.

The question whether a general finding made by a judge hearing a case without jury was warranted on the evidence cannot be raised by an exception to the finding.  [374]

A finding that a treatment center for sexually dangerous persons only recently established at a State hospital for the criminal insane met the requirements of G. L. c. 123A, § 2, as appearing in St. 1958, c. 646, § 1, was warranted on evidence that the sexually dangerous persons were segregated in a wing of the hospital separated from the rest of it by locked doors, that they were not intended to "mix generally" with the criminal insane, although there was some mingling with them at meal and recreation times, and that there was available to the center the general medical staff of the hospital, a diagnostic staff of two doctors, and two psychiatric social workers.  [374–377]

PETITION for commitment, filed in the Superior Court on June 2, 1959.

The case was heard by *Tomasello, J.*

*Edward P. Kirby & Richard E. Bachman,* for the defendant.

*Neil Colicchio,* Assistant District Attorney, (*Robert M. Sriberg,* Assistant District Attorney, with him,) for the Commonwealth.

SPALDING, J.   On March 4, 1959, the defendant was indicted for indecent assault and battery upon a child under the age of fourteen.   He was arraigned on March 6 and pleaded not guilty.   Subsequently, on March 18, he retracted his not guilty plea and pleaded guilty.   At every stage of the proceedings herein discussed the defendant was represented by counsel.   On the same day that the defendant pleaded guilty the district attorney moved, under

G. L. c. 123A, § 4, inserted by St. 1958, c. 646, § 1, that before sentence was imposed the defendant be committed to the treatment center mentioned in the statute for a period not exceeding sixty days for the purpose of examination and diagnosis. This motion was allowed and the defendant on March 18 was committed to the Correctional Institution at Concord for examination and diagnosis in accordance with § 4. At Concord the defendant was examined by two psychiatrists, and on May 15 they filed their report stating that in their opinion the defendant was a sexually dangerous person.

On June 23, 1959 (doubtless as a result of our decision in *Commonwealth* v. *Page,* 339 Mass. 313, rendered on June 2, 1959), the court heard evidence on whether a treatment center as prescribed in § 2 for the care, treatment, and rehabilitation of sexually dangerous persons had been set up. At the conclusion of the evidence, the judge made a general finding that such a treatment center had been established. To this finding the defendant excepted. On the following day (June 24) the judge, after notice and hearing, found that the defendant was a sexually dangerous person, and ordered him committed to the treatment center at the Massachusetts Correctional Institution at Bridgewater for the indeterminate period prescribed by § 5, subject to the defendant's exception.[1] The defendant was committed in accordance with this order.

On December 4, 1959, the defendant filed a motion for a "new hearing" on the question of whether a treatment center as prescribed by c. 123A had been established. In his motion, which was accompanied by his affidavit, the defendant stated that he had new evidence on the issue. On December 10, this motion was denied, after hearing, subject to the defendant's exception.

The defendant's exceptions raise the following questions: 1. Did the court err in finding that the treatment center met the requirements of c. 123A? 2. Did the court abuse its discretion in denying the defendant's motion for a new

---

[1] This finding was amply supported by evidence and is not now challenged.

hearing on the issue of whether the treatment center complied with the law?

1. The defendant seeks to raise the first question by an exception to the general finding that a treatment center which satisfied the statute had been established. It is settled by a long line of cases that if a party wishes to present the question whether a finding is warranted by the evidence he must "request a ruling at the trial, before the judge takes the case under consideration on the facts, and within such time as may be prescribed by rule . . . , and cannot raise the question by an exception to the general finding or decision taken after it is made." *Stowell* v. *H. P. Hood & Sons, Inc.* 288 Mass. 555, 557. *Matter of Loeb,* 315 Mass. 191, 194–195, citing many cases. *Newton* v. *Commonwealth,* 333 Mass. 523, 524. Compare *Leshefsky* v. *American Employers' Ins. Co.* 293 Mass. 164, 167. This rule of practice alone requires that the exception with respect to the first point be overruled. However, in view of the seriousness of the question, we are of opinion that an indication of our views on the merits is appropriate.

The evidence on this issue was as follows: On June 19, 1959, with the approval of the commissioner of correction, a treatment center was established at the Massachusetts Correctional Institution at Bridgewater. The center consisted of a four story wing of the State hospital to which the criminal insane are committed. Until recently the wing had been used to house the criminal insane. The center is separated from the rest of the hospital by double doors which were kept locked. There are seven individual rooms on each floor (twenty-eight all told) and a common room. The center is "staffed . . . by the general medical staff at the hospital, a purely diagnostic staff consisting of . . . [two doctors], and an administrative staff under a Mr. Krueger of the division of legal medicine consisting, for the time, of two psychiatric social workers." The center is under the control of the department of correction, and the "department of mental health is responsible for advising . . . [the department of correction] as to the type of mental staff

and treatment.'' There are no full time personnel assigned to the center, but part-time personnel are available to meet the treatment needs of the center from day to day. The wing can accommodate twenty-eight persons, and more, if the common rooms are used as a ward. At the time of the hearing there were probably twenty persons at the center. There are no dining or infirmary facilities available at the center separate from those used by the criminal insane.

The commissioner of correction testified, when asked if the inmates mingled with the criminal insane, that the ''plan is not to have them mix generally.'' He further testified that it was not intended that inmates of the center should go into the other parts of the institution; that if they did so it would be for some specific reason and they would be in custody of some correction officer or employee; that in matters pertaining to ''recreating [in] the yard,'' eating in the dining room, and seeing ''movies,'' the patients of the center may be in the same room with the criminal insane; but ''the plan is to keep them separated.''

In *Commonwealth* v. *Page,* 339 Mass. 313, it was held that a person who has been determined to be a ''sexually dangerous person'' and is subject to an indefinite commitment in a treatment center cannot be committed to a prison where a treatment center has not been established. In other words, the summary procedure established for dealing with sexually dangerous persons can be employed only to commit a person for treatment in the centers established for such treatment, and a commitment pursuant to such procedure that is tantamount to a prison sentence is invalid. To be sure, the statute under consideration in the *Page* case was somewhat different from St. 1958, c. 646, § 1, here involved, but the differences are not such as to make what was there decided inapplicable here. The question, then, is whether the judge, on the evidence summarized above, could warrantably have found that the treatment center to which the defendant was committed satisfied the statute. If it did not the commitment cannot stand.

In the *Page* case we expressly disclaimed any attempt to

state the standards to be observed in a treatment center. We do not now undertake to state them. All that we decided there was that a confinement in a prison which is undifferentiated from the incarceration of convicted criminals was not confinement in a treatment center within the purview of the statute. The situation in the case at bar is not the same as that in the *Page* case. Here the defendant is segregated in a separate wing which has been established solely for those who have been committed as sexually dangerous persons. There is available to the center the general medical staff of the hospital, a diagnostic staff of two physicians, and two psychiatric social workers. To be sure, there is some mingling with the criminal insane at meal times and during periods of recreation. But that is not incarceration in a prison where there "was no separate staff for the treatment of sex offenders and the only treatment then available to persons committed to the center and not under diagnostic observation was the 'program of group and individual psychiatric therapy for the total prison population which might include sex offenders.' " *Commonwealth* v. *Page, supra,* at page 316. It is to be noted that the center here was established on June 19, three weeks after the decision in the *Page* case and four days before the hearing in the court below. It can hardly be expected that within such a brief period a smoothly operating and adequately staffed treatment center could be established. It is apparent that the departments of correction and mental health were endeavoring to set up a center that would comply with the statutes. The center established (because of the mingling during meal times and recreation periods and the somewhat meager psychiatric treatment and therapy afforded) leaves much to be desired. The remedial purpose of the statute, namely the care, treatment and rehabilitation of the sexually dangerous person, must not be overlooked; indeed that is its primary objective and there must be more than mere incarceration if the statute is to "escape constitutional requirements of due process." *Commonwealth* v. *Page, supra,* at page 318. The "reme-

dial aspect of [the] confinement . . . [had] foundation in fact'' (*ibid.*, page 317) at the time of the defendant's commitment. We cannot assume that the necessary action to establish a fully adequate treatment center, already begun, will not be carried to completion. If it should later appear that it has not, a different question will be presented. We are of opinion, in view of the brief period that the treatment center had been in operation, that the finding that it satisfied the statute was not unwarranted. In reaching this conclusion we have assumed that, had there been no segregation of sexually dangerous persons at the center so that the defendant's incarceration would have been with the criminal insane, the commitment would have been invalid. See *Miller* v. *Overholser,* 206 F. 2d 415 (Ct. App. D. C.).

2. The sole question presented by the denial of the defendant's motion for a ''new hearing'' on the ground of new evidence is whether there was an abuse of discretion. We are of opinion that there was not. The governing principles applicable to motions of this sort have been stated in numerous decisions and need not be restated. See *Sharpe, petitioner,* 322 Mass. 441, 444–445, and cases there collected.

*Exceptions overruled.*