Lyman H. Smith, J.
The respondent has been adjudicated a juvenile delinquent upon the finding of this court (Family Ct. Act, § 752) that he committed acts which, if committed by an adult, would constitute the crimes of murder in violation of subdivision 3 of section 125.25 of the Penal Law, robbery in the first degree, in violation of subdivision 3 of section 160.15 and grand larceny in the third degree, in violation of subdivision 5 of section 155.30 of the Penal Law.
Upon the adjudicatory hearing, conducted without a jury (see Matter of D. [Daniel], 27 N Y 2d 90) this court has found that *962 on the evening of April 26, 1973, while acting in concert with two other persons, the respondent, with specific intent, robbed one Luigi Pacelli, age 59, in the course and furtherance of which said crime he and his companions bludgeoned their victim and thereby inflicted wounds, from which the victim died. A preliminary motion for jury trial was denied. (Matter of D. [Daniel], supra.) The adjudication hearing commenced on May 16, 1973, and was concluded on July 24, 1973, the court having filed on the latter date its findings of fact in writing, to which reference is hereby made- for a more particular recital of the findings and ground's upon which final adjudicatory determination has been made.
In accordance with sections 743, 745 and 746 of the Family Court Act a “ dispositional hearing ” has been held, beginning on July 24,1973 and has been concluded as of even date herewith (July 25,1973).
The respondent’s Law Guardian now moves that the court in fixing disposition, i.e., sentence (Family Ct. Act, §§ 753 and 758) refrain from any disposition under subdivision (b) of section 758 of the Family Court Act, which subdivision presently authorizes a commitment of a 15-year-old male delinquent, heretofore found to have committed acts constituting a Class A felony (murder) or a Class B felony (robbery) to the Elmira Reception Center for an indefinite reformatory term not to exceed three years.
Specifically, the Law Guardian contends that, absent trial by jury, the court is precluded from the statutory commitment (Family Ct. Act, § 758, subd. [b]) on the usual constitutional grounds of denial of equal protection of the laws (U. S. Const., 14th Amdt.) denial of due process (U. S. Const., 5th and 14th Amdts.) and infliction of cruel and unusual punishment (U. S. Const., 8th Amdt.). He points to the arbitrary and discriminatory treatment of 15-year-olds under the statute (Family Ct. Act., § 758, subd. [b]) as opposed to that accorded the 14-year-old juvenile, citing Duncan v. Louisiana (391 U. S. 145), Baldwin v. New York (399 U. S. 66), People v. Michael A. C. (27 N Y 2d 79) holding, in effect, that due process includes the right to trial by jury; and Matter of Gault (387 U. S. 1,13) hold-, ing, in effect, “ neither the Fourteenth Amendment nor the Bill of Rights is for adults alone ”. The Law Guardian also commendably calls to the attention of the court recent decisions in sister courts of our State which have refused to implement subdivision (b) of section 758 of the Family Court Act, viz. (Matter *963 of Reginald S., 64 Misc 2d 1002; Matter of Anthony F., 69 Misc 2d 932; and Matter of Rice v. Cory, 73 Misc 2d 813).
In Reginald S. (supra) the New York County Family Court held that a juvenile, facing possible incarceration in the Elmira Reception Center under subdivision (b) of section 758 of the Family Court Act, was entitled either to n trial by jury or to a prehearing declaration by the Family Court Judge that any commitment to Elmira would not exceed six months (citing Baldwin v. New York, 399 U. S. 66, supra). In Anthony F. (supra) the Kings County Family Court went further and held that any incarceration of a juvenile for any period of time at Elmira Reception Center was probably unconstitutional absent the right of trial by jury. In Rice (supra), Special Term of Supreme Court (Richmond County) under an article 78 proceeding, refused an application for a stay of the juvenile fact-finding hearing, but adopted the rationale of Anthony F., holding that while a jury trial of the juvenile was not required (Matter of D. [Daniel], 27 N Y 2d 90, supra), nevertheless, the Family Court was prohibited from any final disposition that would incarcerate the delinquent juvenile (if so adjudicated) in the Elmira Reception Center.
With respectful deference to our learned colleagues, who have found insurmountable constitutional barriers to the commitment of juvenile delinquents to the Elmira Reception Center, this court is compelled to conclude that the Legislature of the State of New York has wisely récognized the volatile adolescence of the “ juvenile ”, who in his journey from true childhood to adulthood may, and often does, endanger himself and others to such degree that society must impose a strong discipline for its own protection, and yet does so, with the sanguine hope that the subject will eventually prove to be a valuable citizen.
This court finds the reasoning of Reginald S. (supra). and Anthony F. (supra) unnecessarily strained. There seems to he no truly logical connection between the basic right to a “ fundamentally fair ” adjudicatory hearing as contemplated by the Supreme Court of the United States in McKeiver v Pennsylvania (403 U. S. 528) and the ultimate disposition (penalty) imposed on the adjudicated juvenile delinquent under subdivision (b) of section 758 of the Family Court Act. In simplest terms, what does one have to do with the otherf More importantly, ultimate disposition and sentencing of the fairly adjudicated juvenile must reflect with equal fairness the delicate balance between the rights of the individual and the rights of the society in which he lives. To impose the absolute right to *964 trial by jury on our juvenile court system under the guise of saving the juvenile delinquent from what is apparently assumed to be an arbitrary, capricious and inappropriate penalty, places the cart before the horse. One may well inquire “ What happened to the 8th Amendment [U. S. Const.] Í ” It should follow that the Eighth Amendment’s salutary provision against the infliction of cruel and unusual punishment would serve in such instances to save and protect both the adjudicated juvenile respondent and the convicted criminal defendant. Suffice it to say in the instant case there is no evidence that incarceration in the Elmira Reception Center will be cruel or unusual, or that it will be other than most humane, beneficial and appropriate under the circumstances.
With reference to our State’s variant treatment of juveniles of different ages, Judge Lumbard has recently written in United States coo rel. Murray v. Owens, 465 F. 2d 289, 294): “As for the disparate treatment permitted by § 758(b) between 14-year-olds and 15-year-olds, we think that it is reasonable for the state to determine that the inclusion of criminally mature 15-year-olds with younger juvenile delinquents in the State Training Schools would have possibly adverse effects on the younger children and on the proper functioning of the State Traning Schools as well. Albeit nice, the distinction is not unconstitutional; lines once drawn are even subject to the criticism that they are arbitrary, but as long as they bear a reasonable relation to a legitimate state objective, they are permissible.”
Upon all the evidence and testimony adduced upon the fact-finding hearing and the plenary dispositional hearing herein, including his former parole officer and present probation officer, whose report (dated July 23, 1973) is hereby adopted in toto and made a part hereof, this court is satisfied that the respondent’s history, his course of conduct, including the grave criminal acts which he committed on April 26, 1973, and his maturity (he became 16 years old two days ago), now dictate the most serious assessment of the ultimate disposition of this matter.
This court is compelled to conclude from more than a preponderance of the evidence that the safety of the community and, indeed, the safety of the respondent, and his peers, dictate that in accordance with subdivision (b) of section 758 of the Family Court Act, he be committed to the Elmira Reception Center for a reformatory term of not in excess of three years. He shall be, and hereby is, credited with the 71 days he has served (as of midnight of the date hereof) while detained during the course *965 of these proceedings. The commitment hereinabove ordered shall be in satisfaction of each of the criminal acts of murder and robbery in the first degree, as set forth in paragraphs 1 and
2 of the summary of the court’s decision dated July 24, 1973, heretofore filed in these proceedings, and thereby, shall be as to each of such acts a commitment to run concurrently, each with the other. The court concludes that its findings as to paragraph
3 (grand larceny in the third degree) of the aforesaid summary, merges, as a matter of law, with its findings set forth in paragraph 2 (robbery in the first degree).