In the Matter of O—— H——, a minor, by M—— H___, his Mother, Petitioner,

v.

Ray F. FRENCH, Superintendent, Missouri Intermediate Reformatory, Respondent.

No. KCD 26783.

Missouri Court of Appeals, Kansas City District.

Dec. 31, 1973.

T. E. Lauer, National Juvenile Law Center, St. Louis, for petitioner.

Preston Dean, Asst. Atty. Gen., Ray F. French, Superintendent, Missouri Intermediate Reformatory Jefferson City, for respondent.

Before DIXON, C. J., and SHANGLER, PRITCHARD, SWOFFORD, WASSERSTROM and SOMERVILLE, JJ.

WASSERSTROM, Judge.

The mother of O—— H——, a juvenile, petitioned directly to this Court for his release from the Missouri Intermediate Reformatory at Algoa, Missouri. Pursuant to a writ issued by this Court, respondent made a return, the petitioner filed a reply, the parties entered into a stipulation of facts, and the case was fully submitted on written briefs and oral argument.

■ Subsequently, the Attorney General filed a "Notice of Release" advising that O—— H—— has been released from the Missouri Intermediate Reformatory and has been placed in after-care status by the State Board of Training Schools. At the same time, the Attorney General stated that "[t]he respondent herein does not oppose the determination of this case even though the petitioner is no longer in custody since the respondent believes that this case presents issues which are of great importance and which may arise again". Under these circumstances, this Court in the exercise of its discretion will not dismiss these proceedings on the grounds of mootness. Boone v. Danforth, 463 S.W.2d 825, 829 (Mo. banc 1971); cf. In re C—— F—— B——, 497 S.W.2d 831, l.c. 834 (Mo. App.1973).

The record here shows that after an earlier commitment to the State Board of Training Schools which was terminated by a parole, O—— H—— was again committed to the custody of the Training School at Boonville, Missouri on November 13, 1972, by an order of the Juvenile Court of the City of St. Louis. On December 29, 1972, a riot took place at the Boonville Training School, as to which the staff determined that O—— was a leader. Because of this and other previous incidents, the board voted on February 17, 1973, to institute proceedings under § 219.230, RSMo 1969, V.A.M.S., for the transfer of O—— to the custody of the Department of Corrections. Pursuant to that determination, a motion was filed in the Juvenile Court at St. Louis, and that court held a

hearing on the motion on April 25, 1973. Based upon the results of that hearing, the Juvenile Court found that O—— had been repeatedly disruptive of the rehabilitation and training programs; that he constituted a threat to the safety and integrity of the training school, its personnel and its inmates; that there was no suitable place other than the Department of Corrections for his confinement; that his conduct was not the result of a mental problem requiring hospitalization; and therefore, the court ordered that he be transferred to the care of the Department of Corrections to be dealt with in accordance with a program of treatment "to be established" and supervised by the Board of Training Schools in cooperation with the Department of Corrections. O—— was received by the Department of Corrections under that order on May 3, 1973, and he was immediately placed in the Algoa Reformatory.

The petition filed in this Court and the briefs in support thereof urge numerous grounds for finding the confinement to be illegal, which can be consolidated and summarized as follows: 1) That the statute under which this transfer was made, § 219.230, is unconstitutional because it authorizes imprisonment of a juvenile without the protections which are given to adult inmates who can be incarcerated at the Algoa Reformatory only after due prosecution under the criminal laws and procedures. Petitioner claims that this results in a denial of due process, of equal protection of the laws, of right to trial by jury, of the right to be proceeded against by indictment and information, and constitutes the imposition of cruel and unusual punishment. 2) That there has not been a compliance with the statutory requirements of § 219.230, for the reason that the Board of Training Schools and the Department of Corrections have not provided "a program of treatment and rehabilitation" within the meaning of the legislative intention. 3) That O—— H—— has been denied due process of law because the criteria provided in the statute for transfer to

the Department of Corrections are unduly vague. 4) That the procedure followed before the Juvenile Court in connection with this transfer was defective in certain specified respects.

## I

■ Before commencing consideration of petitioner's contentions, disposition must be made of a challenge by the respondent to the jurisdiction of this court to hear this original proceeding. Respondent challenges the jurisdiction herein on the theory that § 532.030, RSMo 1969, V.A.M.S. and Rule 91.59 V.A.M.R. require an application for habeas corpus be made in the first instance to the judge of the circuit court of the county in which the alleged wrongful confinement is occurring. Respondent's argument is fallacious, because the statute and the rule upon which he relies apply only in a situation where the person detained is "in custody on a charge of crime or misdemeanor". That is not the situation here, since juvenile delinquency is not a criminal charge.

Attention is also called to Rule 84.22 which requires generally that no original remedial writ shall be issued by an appellate court where adequate relief can be granted by a lower court; but that rule specifically excepts from the operation thereof applications for habeas corpus.

## II

Petitioner's principal argument in this case is that it is unfair and constitutionally invalid to incarcerate O—— H—— in an adult penal institution without according to him the full panoply of the many protections provided to persons accused of criminal offenses. Some of those protections, especially trial by jury, are held not to be necessary in juvenile proceedings, the reason given being that juvenile proceedings are not criminal in nature and have as their objective not punishment, but rather, treatment and rehabilitation. If instead of the promised treatment and rehabilitation, the State does in fact subject the juvenile

to punishment by imprisoning him in a regular penal institution, then he will have been deprived of constitutional rights under false pretenses. Stated another way, the juvenile will be deprived of the quid pro quo in exchange for which he was required to surrender constitutional protections.

This argument presents a serious and vexing problem in a situation where a juvenile is either committed originally by a juvenile court to an ordinary adult penal institution or where the juvenile is originally committed to a juvenile training school and thereafter is transferred to an ordinary adult penal institution. Cases involving those situations have been presented in numerous cases throughout the country, and the courts have reached conflicting results. The cases on the subject are collected in Pyfer, "The Juvenile's Right to Receive Treatment", 6 Fam.L.Q. 279, 1. c. 286, and in 16 St.L.U.L.J. 479 1. c. 486. A number of the cases adopt the basic argument advanced by the petitioner in the instant case. Among the decisions so holding are White v. Reid, 125 F.Supp. 647 (D.C.Dist. of Col., 1954); White v. Reid, 126 F.Supp. 867 (D.C.Dist. of Col., 1954); United States ex rel. Stinnett v. Hegstrom, 178 F.Supp. 17 (D.C.Conn., 1959); Baker v. Hamilton, 345 F.Supp. 345 (D.C.Ky., 1972); In re Rich, 125 Vt. 373, 216 A.2d 266 (1966); State ex rel. Londerholm v. Owens, 197 Kan. 212, 416 P.2d 259 (1966); Inmates of Boys' Training School v. Affleck, 346 F.Supp. 1354 (D.C.R.I., 1972). On the other hand, as many or more cases do permit transfers of this type. Among cases so holding are Harwood v. State ex rel. Pillars, 184 Tenn. 515, 201 S.W.2d 672 (1947); Sonnenberg v. Markley, 289 F.2d 126 (C.A.7, 1961); Suarez v. Wilkinson, 133 F.Supp. 38 (D.C.Penn., 1955); Arkadiele v. Markley, 186 F.Supp. 586 (D.C. Ind., 1960); Clay v. Reid, 173 F.Supp. 667 (D.C.Dist. of Col., 1959); Wilson v. Coughlin, 259 Iowa 1163, 147 N.W.2d 175 (1966); Long v. Langlois, 93 R.I. 23, 170 A.2d 618 (1961). The New York lower courts are divided on this subject, as set forth in the opinion of In re Garrett, 74 Misc.2d 961, 346 N.Y.S.2d 651 (1973). A strong and rather persuasive recent federal opinion espousing a position antithetical to that taken by the petitioner in the present case is found in United States ex rel. Murray v. Owens, 465 F.2d 289 (C.A.2, 1972).

However, any necessity for choice here between these divergent views has been obviated by the 1972 amendment to the Missouri statute covering this subject. Prior to that amendment, § 219.230 permitted the Board of Training Schools with the approval of the Governor to transfer any person committed to its custody to any state adult correctional institution "for the purpose of discipline". In Boone v. Danforth, 463 S.W.2d 825 (Mo. banc 1971), the Supreme Court held that statute unconstitutional in that it permitted transfer by administrative action without any judicial hearing or determination.

In response to that opinion, the Legislature promptly amended § 219.230 to its present form, under which a judicial hearing upon due notice is required as are also certain factual findings. What is even more important for present purposes, the Legislature did not stop there, but went still further by making provision as to the juvenile's dispositional care after the transfer had been completed. The Legislature did not merely say that the juvenile could be transferred to the Department of Corrections to be handled by that Department in accordance with its regular routines. Instead, the statute provides that the juvenile shall be "dealt with in accordance with a program of treatment and rehabilitation to be established and supervised by the state board of training schools in cooperation with the department of corrections." This latter provision makes plain beyond peradventure of any doubt that neither O____ H____ nor any other child may be transferred to the Algoa Reformatory to be handled there on the same basis as the regular program already in effect for all other inmates. The provision quoted can have no other meaning except that the

Board of Training Schools, in conjunction with the Department of Corrections, must establish something new for these transferred juveniles which did not exist before and which is to be especially devised for their particular care and treatment.

Thus it is plain that under the present Missouri statute, juveniles are not transferred to adult penal institutions to be held on some undifferentiated basis with all regular adult inmates. Rather, they are to be merely physically housed in that adult facility but are to receive the benefits of a special program devised for particular juvenile needs.

Where as here, juveniles are to be treated differently even though they are in the same physical facility with adult inmates, the legal problem becomes vastly different as compared with the situation where they are intermingled indiscriminately with the adult inmates. True, enough, some legal writers refuse to concede that there should be a difference in result. See for example, Pirsig, "The Constitutional Validity of Confining Disruptive Delinquents in Penal Institutions," 54 Minn.L.Rev. 101, l.c. 139 (1969). However, courts in somewhat analogous situations have indicated that segregation for the special juvenile purpose and pursuant to the establishment of a specialized program will meet the constitutional requirements. In re De La O, 59 Cal. 2d 128, 28 Cal.Rptr. 489, 378 P.2d 793 (1963); In re Cruz, 62 Cal.2d 307, 42 Cal. Rptr. 220, 398 P.2d 412 (1965); Commonwealth v. Hogan, 341 Mass. 372, 170 N.E.2d 327 (1960). Moreover, a recent opinion, State ex rel. Edwards v. McCauley, 50 Wis. 2d 597, 184 N.W.2d 908, l.c. 914 (1971) states, albeit by dictum, that a separate program of treatment for juveniles within an adult facility would meet the legal requirements:

"It should be clear that the establishment of medium or close security facilities, either at the existing child-serving institutions, or in a separate location, *or even as separated facilities within the geographical confines of penal institutions,* would avoid, not only the commingling of children adjudged delinquent with adults found guilty of criminal offenses, but would eliminate, all members of this court agree, the possibility of successful attack upon constitutional grounds of such facilities for care and treatment of disruptive or dangerous juvenile delinquents." (Emphasis added.)

We are of the considered opinion that no legal barrier should be erected against the housing of juveniles presenting serious disciplinary problems in adult institutions, provided they are sufficiently segregated from the other inmates and are provided a specially prepared treatment program appropriate to their needs. There are many considerations to be balanced against each other in this situation. One of these considerations, and one which the courts cannot and should not ignore, is the matter of costs. If a new and separate physical institution were to be demanded for the housing of the relatively few unusually difficult juveniles like O—— H——, the funds for that purpose in all likelihood would have to be diverted from other sorely needed services to them and other less troubled juveniles. Where choices are posed between paying for more brick and mortar as against providing more and better staff and services, courts must hesitate and exercise self-restraint from dictating how the limited funds available shall be spent. Unquestionably, situations like the one here can be handled less expensively by a separate treatment program physically housed in an adult facility. No constitutional imperative forbids a conscientious, good faith effort to do so.

Since it was the plain legislative intention that a separate and special program for juveniles be established for transferees under § 219.230, this statute is immune from the constitutional attacks now under consideration.

### III

This leads logically to a consideration of whether the program under which O—— H—— was being held in the Algoa Reformatory complied with the requirements of § 219.230. As already stated under Section II of this opinion, the statute as amended in 1972 is incapable of any interpretation other than that transferred juveniles are not to be held under just the existing programs already in effect for adult offenders. The provision of the statute that transferees are "to be dealt with in accordance with a program of treatment and rehabilitation *to be established*" means that something new and different from what already existed for adult inmates had to be devised by the authorities.

In contrast to that statutory requirement, the State Board of Training Schools was content to permit the Department of Corrections to simply throw O—— H—— into the general reformatory population and subject him to the same general program applicable to all other inmates. This is made abundantly evident by the Stipulation *of Fact filed in this Court* by the parties, in paragraph 23 of which the parties agree that:

"The program in which O—— H—— is involved at the Missouri Intermediate Reformatory is basically the same as the program in which all other inmates at the Intermediate Reformatory are involved. The general program at the Missouri Intermediate Reformatory differs from inmate to inmate only in that each inmate is assigned to a school level which is comparable to his ability and each inmate is assigned to a job depending on his mechanical background with some consideration given to his choice of jobs."

A study of this stipulation discloses only one difference in what was done for O—— H—— as compared to other inmates. That difference consisted of a visit once per month by a representative of the Missouri Board of Training Schools to the Algoa Reformatory. This slight overlay does not significantly change the pre-existing program already set up for the adult inmates and is in nowise sufficient to constitute the new specialized program for juvenile transferees which was contemplated by the 1972 statutory amendment and which in addition would be required in order to avoid the serious constitutional questions discussed under Section II of this opinion.

█ It is unnecessary and indeed will be inappropriate for this Court to undertake to prescribe just what the program for juvenile transferees should be. It is sufficient to be able to say that what has been done by the administrative authorities until now does not suffice. What was said in Commonwealth v. Page, 339 Mass. 313, 159 N.E.2d 82, l.c. 85 (1959), in an analogous situation, is also applicable here:

"Notwithstanding that the center was to be maintained only at correctional institutions, we assume, without deciding, that the statute was nonpenal in character and under its provisions the commissioner of mental health could have so organized and operated the center that the restraints, discipline and regimen made applicable to the defendant would have been only such as would be appropriate for the custody, care and treatment of a sexually dangerous person not under sentence.

"But to be sustained as a nonpenal statute, in its application to the defendant, it is necessary that the remedial aspect of confinement thereunder have foundation in fact. It is not sufficient that the Legislature announce a remedial purpose if the consequences to the individual are penal. *While we are not now called upon to state the standards which such a center must observe to fulfill its remedial purpose,* we hold that a confinement in a prison which is undiffer-

entiated from the incarceration of convicted criminals is not remedial so as to escape constitutional requirements of due process." (Emphasis added.)

■ The Missouri Legislature has made it crystal clear in § 219.230 that the new program for transferee juveniles is to be devised in the first instance by the administrative authorities attached to the staffs of the Board of Training Schools and the Department of Corrections. That perceptive approach by the Missouri Legislature is very much in accordance with the scholarly recommendation made by Kittrie in his article "Can the Right to Treatment Remedy the Ills of the Juvenile Process?", 57 Geo.L.J. 848, 1.c. 881 (1969). Then, any challenge to the administrative program so devised will be subject to judicial review in the juvenile court. See: Creek v. Stone, 126 U.S.App.D.C. 329, 379 F.2d 106, 1.c. 110 (1967). Any dissatisfaction with the conclusions of the juvenile court would be subject to further review (possibly by appeal but otherwise at least through application for writ of habeas corpus) in an appellate court; and by that procedure the appellate court would have the advantage of a fully developed factual record, which has not been afforded in the present proceeding.

■ In connection with the creation and judicial review of this program of treatment, some of the factors to be considered will be the furnishing of special staff to serve the needs of juvenile transferees, the ratio of the adult staff to juvenile inmates, and the degree of physical separation of the juvenile transferees from the general adult population. See by way of further suggestions, the opinions in Commonwealth v. Page, supra; Commonwealth v. Hogan, 341 Mass. 372, 170 N.E.2d 327 (1960); In re Cruz, 62 Cal.2d 307, 42 Cal.Rptr. 220, 398 P.2d 412 (1965); and State ex rel. Londerholm v. Owens, 197 Kan. 212, 416 P.2d 259 (1966). Particular attention is called to that portion of the Kansas case

last cited in which the court emphasized the matters of size of inmate population, the individualization of treatment program, and inclusion on the staff of professionals in the behavioral sciences, psychiatry and sociology, all of which are consistent with the objectives of the Missouri juvenile laws.

IV

■ In order for a juvenile to be transferred from the Board of Training Schools under § 219.230, the statute requires that the Board find the juvenile to be "repeatedly injurious or physically assaultive" or "repeatedly disruptive of rehabilitation or training programs" or to constitute a threat to "the safety and integrity of such an institution, its personnel or inmates". The statute further requires the juvenile court to determine that there is no "other suitable place" to confine the juvenile and that his conduct complained of is not the result of "a mental problem requiring hospitalization". The statute further provides that no juvenile transferred to the Department of Corrections may be permitted to consort with "vicious or habitual criminals". Petitioner challenges all of the above-quoted phrases as being too vague to meet the constitutional requirements of due process of law.

We do not agree with petitioner's criticism. Each of these terms is readily comprehensible according to common understanding. The terms here in question are at least as definite and certain as the phrase "a proper subject to be dealt with" under the provisions of the juvenile act, as that term is used in § 211.071, RSMo 1969, V.A.M.S., and which was upheld against an attack of unconstitutional vagueness in State v. Williams, 473 S.W.2d 382 (Mo. 1971), and in Coney v. State, 491 S.W.2d 501 (Mo.1973). It may be appropriately pointed out that so far as the doctrine of vagueness is concerned, juvenile statutes have always been regarded more liberally than criminal laws. "Parens Patriae and

Statutory Vagueness in the Juvenile Court", 82 Yale L.J. 745 (1973). This liberality of treatment is even more appropriate in a situation such as the one here where the problem is one of transfer between institutions, rather than original commitment.

## V

Petitioner raises various procedural points, including challenges to the sufficiency of the allegations in the pleadings before the Juvenile Court and the sufficiency of the evidence introduced at the hearing held at the Juvenile Court on April 25, 1973. With a single exception, no purpose would be served in considering these procedural questions, inasmuch as they are peculiar to this particular case, no longer represent live issues, and would serve no useful guidance for future cases.

The one exception which should be considered here is petitioner's contention that a proceeding under § 219.230 must be by a new petition initiating a new case. She argues that the Juvenile Court in the present situation acquired no jurisdiction, because the Board of Training Schools proceeded by filing a motion in the original case in which O—— H—— was committed to the Boonville Training School.

There is nothing in the language of § 219.230 which indicates that proceedings thereunder must be by a new petition, rather than by motion in the original case. All that this section states is that under the circumstances specified "the board may so inform the juvenile court". No reason is seen why the board may not properly inform the Juvenile Court by motion just as well as by a new petition. If any choice is to be made, it would appear that when the proceeding under § 219.230 is brought in the Juvenile Court which made the original commitment, it will be more efficient for the additional procedure to be by motion in the original cause. In this way all pleadings and documents will be in one single file, which will make for greater facility

of handling and easier reference to the case history.

The juvenile O—— H—— is remanded to the custody of the State Board of Training Schools.

All concur.