## CALVIN F. TATE, petitioner.

Suffolk. December 8, 1993. - March 9, 1994.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Sex Offender. Practice, Civil*, Sex offender. *Jurisdiction*, Sex offender. *Evidence*, Sex offender.

The judge at a hearing on a petition under G. L. c. 123A, § 9, for release from commitment as a sexually dangerous person retained jurisdiction to reverse his grant of the petitioner's motion for a required finding in his favor, where the judge had allowed the motion solely on the basis of the Department of Correction's improper transfer of the petitioner to a facility without a treatment center (wherein the petitioner wished to remain) and where the judge did not make an absolute finding on the petitioner's sexual dangerousness within the meaning of *Commonwealth v. Travis*, 372 Mass. 238, 248 (1977), until his later written memorandum. [229-231]

No prejudicial error appeared at a hearing on a petition under G. L. c. 123A, § 9, for release from commitment as a sexually dangerous person (SDP), in the judge's consideration of a restrictive integration review board's report that did not strictly meet the requirements of G. L. c. 123A, § 8, where there was other sufficient evidence to support the judge's determination that the petitioner remained an SDP. [231-232]

At a hearing on a petition under G. L. c. 123A, § 9, for release from commitment as a sexually dangerous person, the petitioner did not demonstrate that the judge improperly relied on evidence introduced at an earlier SDP hearing over which he had presided, where there was ample evidence in the current hearing record for the judge to conclude that the defendant remained a sexually dangerous person. [232-234]

PETITION filed in the Superior Court Department on September 27, 1989.

The case was heard by *Guy Volterra*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Clifford A. Truesdell* for the petitioner.

*LaDonna J. Hatton*, Assistant Attorney General, for the Commonwealth.

LYNCH, J. The denial of the petition of Calvin F. Tate (petitioner) under G. L. c. 123A, § 9 (1992 ed.), for release from commitment as a sexually dangerous person (SDP)[1] was affirmed by the Appeals Court.[2] See *Tate, petitioner*, 34 Mass. App. Ct. 1123 (1993). We granted the petitioner's application for further appellate review. The petitioner contends here that: (1) the judge erred in admitting in evidence the report of the restrictive integration review board (board); (2) the judge improperly relied on evidence introduced at an earlier SDP hearing over which the judge presided; and (3) the judge erred by finding the petitioner sexually dangerous after earlier granting the petitioner's motion for a required finding of not sexually dangerous and issuing an order for discharge. We affirm.

We briefly summarize the facts. On May 29, 1991, a hearing was held in the Superior Court on a petition under G. L. c. 123A, § 9, seeking discharge of the petitioner from the treatment center. Michael B. Stevens, chairman of the board, testified that the petitioner suffers from a set of chronic disabilities including sexually aggressive behavior and an inabil-

---

[1]General Laws c. 123A, § 1 (1992 ed.), defines "[s]exually dangerous person" as "any person whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive sexual misconduct by either violence against any victim, or aggression against any victim under the age of sixteen years, and who, as a result, is likely to attack or otherwise inflict injury on such victims because of his uncontrolled or uncontrollable desires."

[2]On October 28, 1982, after pleading guilty to indictments arising from violent sexual assaults on three separate victims in January and April of 1982, the petitioner was sentenced to three concurrent prison terms of from fifteen to twenty years. On January 20, 1983, after a hearing, the petitioner was deemed a sexually dangerous person and committed to the treatment center for an indeterminate period of from one day to life. See G. L. c. 123A, § 5 (1992 ed.). In March, 1990, the petitioner was sent to the Massachusetts Correctional Institution (M.C.I.) at Cedar Junction because, in March, 1989, he had assaulted a correction officer at the treatment center. In March, 1991, the petitioner pleaded guilty to the three counts of assault and battery on a correction officer and was sentenced to from one and one-half to four years at M.C.I., Cedar Junction.

ity to understand other people's boundaries. Dr. Cornelius Kiley, a forensic psychologist, stated that he had examined the petitioner, reviewed his treatment and criminal records, and was of the opinion that the petitioner is an SDP. Dr. Kiley opined that, if released, the petitioner was likely to commit an act of aggression or violence. The board report, which was also introduced in evidence, concluded that the petitioner remained an SDP.

At the close of the Commonwealth's evidence, the petitioner moved for a required finding of not sexually dangerous. The judge stated: "I believe the procedure adopted by the Department of Correction in transferring [the petitioner] to [M.C.I.] Cedar Junction does not comply with the provisions of General Laws Chapter 123A, and under such circumstances [the petitioner's] motion is allowed, memorandum to follow." In reaching this conclusion, the judge relied on the principle that "a person who has been determined to be a 'sexually dangerous person' and is subject to an indefinite commitment in a treatment center cannot be committed to a prison where a treatment center has not been established." *Commonwealth* v. *Hogan*, 341 Mass. 372, 375 (1960), citing *Commonwealth* v. *Page*, 339 Mass. 313 (1959). Thus, the basis for granting the motion was the petitioner's transfer to M.C.I., Cedar Junction, a facility without a treatment center. See note 2, *supra*. Because he was concerned about the delay a reversal of the judge's decision would cause, the petitioner requested that the judge reserve ruling on his motion and proceed with the remainder of the hearing. The judge refused and stated he was required to deal with the motion and did so. The judge noted that he had made his ruling and he would have "to live with it." Later, the judge stated: "I'm just going to call it. If, when writing my memo, I determine that I am in error on something, I will reverse my decision and we'll call everybody back and have another hearing. But right now, I believe you are right and I have acted and that's the end." On the same day, a written order for discharge was entered stating that the court had determined that the petitioner is no longer sexually dangerous.

The judge did reverse himself in his written memorandum of June 7, 1991. There the judge denied the petitioner's motion for a required finding of not sexually dangerous, noting that, at the conclusion of the Commonwealth's case, "there was ample evidence that proved the petitioner continues to be a sexually dangerous person." However, the judge was concerned with the fact that the petitioner had been transferred to M.C.I., Cedar Junction, and was not receiving treatment for his sexual deviance. Therefore, under existing case law, the petitioner should not have been transferred there. See *Commonwealth* v. *Hogan, supra*; *Commonwealth* v. *Page, supra.* The petitioner was transferred to M.C.I., Cedar Junction, because of his "uncontrollable, aggressive, and sometimes violent behavior" at the treatment center. The board report noted, however, that, since his transfer to M.C.I., Cedar Junction, the petitioner's behavior had improved. The judge then ruled that, while the petitioner remained an SDP, "he must be released from confinement and care of the Bridgewater Treatment Center authority and is to remain in the custody and under the supervision of the corrections department at Cedar Junction." On September 25, 1991, relying on *Commissioner of Correction* v. *McCabe,* 410 Mass. 847 (1991), the judge allowed the Commonwealth's motion for reconsideration of the motion for a required finding of not sexually dangerous. Applying *McCabe,* the judge ruled that a person committed to the treatment center as an SDP must remain there until a court determines, that he is no longer sexually dangerous. Therefore, the judge ordered the petitioner removed from M.C.I., Cedar Junction, and returned to the treatment center. The judge stayed his order pending completion of the c. 123A, § 9, hearing because neither party wanted the petitioner returned to the treatment center. The hearing was completed on October 31, 1991, after the petitioner presented evidence that he was no longer an SDP.

1. *Earlier grant of petitioner's motion for a required finding of not sexually dangerous and order for discharge.* In a supplemental brief filed after this court granted the petitioner's application for further appellate review, the peti-

tioner contends that, after the court granted the motion for a required finding of not sexually dangerous, it no longer had subject matter jurisdiction to conclude that the petitioner was sexually dangerous. Furthermore, he contends that, once the judge found the petitioner not sexually dangerous, his finding could not be vacated without denying the petitioner due process. *Commonwealth* v. *Travis*, 372 Mass. 238, 248 (1977).[3]

We ordinarily do not "address an issue not already raised in a case at the time we grant further appellate review." *Phillips* v. *Youth Dev. Program, Inc.*, 390 Mass. 652, 660 (1983). However, "a jurisdictional issue must be decided, regardless of the point at which it is first raised." *Litton Business Sys., Inc.* v. *Commissioner of Revenue*, 383 Mass. 619, 622 (1981).

We do not agree that the judge was without jurisdiction in the matter. The petitioner relies on *Commonwealth* v. *Travis, supra* at 248, where the court reasoned: "An absolute finding that the individual is no longer sexually dangerous is a condition precedent to any form of judicial release from confinement." The *Travis* court noted that once a person is determined to be not sexually dangerous, he cannot be recommitted without a new finding that he is sexually dangerous. *Id.* at 251. Here, the judge's statements of May 29, 1991, along with the order for discharge, do not constitute an absolute finding that the petitioner was not sexually dangerous. Rather, the judge expressly relied on the possibility that he might reverse his initial decision in his written memoran-

---

[3]In *Commonwealth* v. *Travis*, 372 Mass. 238 (1977), the defendant was found to be no longer sexually dangerous and was conditionally released. When the defendant violated the terms of his release, a judge vacated the finding that the defendant was no longer sexually dangerous. The *Travis* court reasoned that a person can be confined under c. 123A only so long as he is an SDP. The court stated: "An absolute finding that an individual is no longer sexually dangerous is a condition precedent to any form of judicial release from confinement." *Id.* at 248. The *Travis* court noted that once a person is determined to be not sexually dangerous, he cannot be recommitted without a new finding that he is sexually dangerous. *Id.* at 251.

dum. Furthermore, the judge's rationale for initially granting the motion had nothing to do with the petitioner's sexual dangerousness at the time of the hearing, but rather was based on his improper transfer to a facility without a treatment center. The judge did not make an absolute finding on the petitioner's sexual dangerousness until his June 7, 1991, memorandum. We note that, without a finding that the individual is not sexually dangerous, there can be no due process violation under *Travis. Commonwealth* v. *Purdy*, 408 Mass. 681, 686 (1990).

2. *Restrictive integration review board report.* The petitioner argues that the judge erred in denying his motion in limine seeking to exclude the board report. The petitioner contends that the report failed to meet the requirements of G. L. c. 123A, § 8 (1992 ed.), and was therefore inadmissible because it was not the product of an examination by the full board, or of an annual review, nor was it an examination to determine treatment progress.

General Laws c. 123A, § 8, third par. (1992 ed.), provides that the board "shall make periodic examinations at least once every year of any person committed to the center in order to determine the progress of treatment and the advisability of the person's participation in the restrictive integration program." This annual report "shall include a statement regarding the person's current sexual dangerousness, and the findings of the [board]." Section 8 further provides that the board "shall update the annual report for the purposes of a hearing under section nine." Pursuant to G. L. c. 123A, § 9, "the updated annual report of the [board] pursuant to section eight shall be admissible in a hearing under this section." The board's annual review admitted in this case occurred on May 15, 1991. The petitioner argues that, prior to this review, he had not been before the board since August 23, 1989.[4] Although it appears that the requirements of § 8

---

[4]According to the petitioner, he never refused to attend any board hearings. The chairman stated that, in August, 1990, an administrative review of the petitioner was conducted without the petitioner being present. The chairman was unsure whether the petitioner received notice of the admin-

were not strictly complied with, it does not follow that the report was not admissible, or that its admission caused reversible error. In *Lane, petitioner,* 35 Mass. App. Ct. 901 (1993), the Appeals Court ruled that no prejudicial error arose from the admission of a board report by an improperly constituted board. In *Lane,* a designee, rather than an individual specified by § 8, sat as a member of the board. *Id.* at 902. The *Lane* court reasoned that "statutory violations are not cause for reversal unless the violation caused some harm." *Id.,* citing *Commonwealth* v. *A Juvenile (No. 2),* 384 Mass. 390, 392 (1981). The *Lane* court noted that the petitioner must show that the error "possibly weakened his case in some significant way so as to require a new trial." *Id.* at 902, quoting *Commonwealth* v. *Levy,* 29 Mass. App. Ct. 279, 286-287 (1990). Here, there was other sufficient evidence to support the judge's determination that the petitioner remained an SDP. Dr. Kiley specifically stated that the petitioner remained an SDP, who, if released, would likely commit an act of aggression or violence. In determining whether the petitioner remained an SDP, the judge was free to credit Dr. Kiley's testimony. Furthermore, the board in this case was legally constituted, and the statute does not require that every member of the board examine a petitioner. Interviews with the petitioner are not indispensable to the conclusion of sexual dangerousness. *Commonwealth* v. *Rodriguez,* 376 Mass. 632, 644 n.16 (1978). The report was not improperly admitted and, even if we assume for purposes of argument that it was, the petitioner was not prejudiced.

3. *Reliance on evidence from an earlier SDP hearing.* The petitioner argues that the judge erred by relying on expert

istrative review. The chairman believed that the petitioner did not appear for the August, 1990, review because he was not brought to the treatment center and that the petitioner refused to attend a review in March. The chairman recognized that the petitioner's refusal may have been because he was not informed of the review in a meaningful way. As a result, the chairman interviewed the petitioner in May, 1991. The board's report was based partly on the chairman's interview with the petitioner. According to the chairman it was not unusual for the board to prepare a report on the basis of one board member's interview of a patient.

testimony, from an earlier hearing, describing the petitioner as tainted by racial rage and a "black predator."

In his June 7, 1991, memorandum, the judge, while addressing the petitioner's dangerous propensities evidenced by his crimes, noted that at earlier hearings the petitioner had been described "as having a 'pattern that is of a primitive, predatory nature, and viewing his white victims as prey for sources of income and objects of racial retaliation.' " The quoted statement was not made by a witness at the May 29, 1991, hearing. In his memorandum, the judge did not identify who made this statement.[5]

However, Dr. Leonard Bard, a qualified examiner whose report was introduced by the Commonwealth and who testified on behalf of the petitioner, noted in his report that the petitioner believed "that his offenses, which occurred against white males and females, were another way of acting out his anger at white society for numerous perceived wrongdoings." Dr. Bard's report also recognized the petitioner's progress with two therapists with whom the petitioner developed a "sense of trust and put aside some of his angry generalizations about white people."

During the October 31, 1991 hearing, Dr. Murray L. Cohen, the petitioner's expert, testified, and his report was admitted in evidence. In addressing the sexual assaults committed by the petitioner, Dr. Cohen's report stated that the sexual assaults were caused not so much by sexual deviancy "but rather uncontrolled sexual wishes that were activated in the course of carrying out other *acts of predation*. At the time, he had anti-social attitudes and values . . . *he was outraged at a white society* that he saw as the cause of his and his family's difficulties." (Emphasis supplied.) During Dr. Cohen's testimony, the judge stated that "it is clear that the evidence that is before me indicates that the petitioner had a dual motive, namely, to commit a sexual act of aggression against white women and that that was motivated from ra-

---

[5]At the October 31, 1991, hearing the judge attributed this statement to a therapist.

cial hatred or retaliation, and a motive to rob." The judge inquired whether the petitioner could control his racial rage. Dr. Cohen questioned the soundness of the judge's statement concerning the petitioner's racial rage against white women. In reply, the judge informed Dr. Cohen that, at an earlier hearing, a therapist with a good relationship with the petitioner had described the petitioner as a "black predator." The judge stated that this was in the record and he could not escape from it. On direct, the petitioner was asked who had made the comments describing him as a "black predator." The petitioner stated that a therapist, Don Smith, had used that terminology in describing his actions with white victims. The petitioner also noted his actions were partly caused by his anger at a racist society. It would not have been improper for the judge to consider testimony from a prior discharge hearing as long as the petitioner had a fair opportunity to confront the witness at the earlier hearing. *Andrews, petitioner*, 368 Mass. 468, 476-477 (1975). In this instance, however, ample evidence existed in the current record for the judge to conclude that racial anger was an ingredient in the petitioner's sexual dangerousness.

The decision denying the petition for release is affirmed.

*So ordered.*